W.C., Plaintiff-Appellee,

v.

Otis R. BOWEN, Secretary, Health and Human Services, Defendant-Appellant.

No. 86–3770.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1986.

Decided Jan. 13, 1987.

William Rutzick, Schroeter, Goldmark & Bender, Seattle, Wash., for plaintiff-appellee.

Howard S. Scher, Dept. of Justice, Washington, D.C., for defendant-appellant.

Before BROWNING, WRIGHT and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

W.C. is a class plaintiff. He represents a class of social security claimants who were denied disability benefits. These denials occurred after favorable ALJ decisions when, pursuant to the Bellmon Review Program, the Appeals Council reviewed and reversed the ALJ decisions. The district court found that the Bellmon Review Program was a substantive rule which required notice and comment rulemaking. Because the rulemaking procedure was not followed, the Appeals Council's decisions were voided and the court ordered that benefits be restored to the class members.

BACKGROUND

The facts are well stated in the district court's opinion. *W.C. v. Heckler,* 629 F.Supp. 791 (W.D.Wash.1985). Briefly, the Social Security Administration terminated W.C.'s disability and SSI benefits on February 17, 1982. Plaintiff requested and received a hearing before an Administrative Law Judge. The ALJ reversed the termination of plaintiff's benefits. The SSA Appeals Council, a body which issues final decisions on behalf of the Secretary of Health and Human Services, reversed the ALJ and terminated plaintiff's benefits.

The ALJ decision was reviewed under the Bellmon Review Program.[1] This was enacted by the Secretary in response to the Bellmon Amendment to the Social Security Act.[2] The Amendment was a response to the increasing number of appeals to ALJs, the high number of allowance decisions by them, and the policy that only ALJ decisions denying claims were subject to review. H.R.Rep. No. 944, 96th Cong., 2d Sess. 57, *reprinted in* 1980 U.S.Code Cong. & Admin.News 1392, 1405; S.Rep. No. 408, 96th Cong., 2d Sess. 53, *reprinted in* 1980 U.S.Code Cong. & Admin.News 1277, 1331.

The Bellmon Review Program provides for own-motion review of ALJ decisions allowing disability benefits. The district court found that:

ALJs with individual allowance rates[3] of 70 percent or higher and ALJs in hearing offices with aggregate allowance rates of 74 percent or higher were targeted for review. Half of the allowance decisions issued by targeted ALJs were evaluated by the Office of Hearings and Appeals for possible review, and 7½ percent of the allowance decisions issued by these ALJs were formally reviewed by the Appeals Council. On April 1, 1982, the targeted ALJs were divided into four groups based on own-motion rates.[4] Each and every allowance decision by ALJs in the group with the highest own-motion rates was evaluated for possible review. In the group with the second-highest rates, 75 percent of the ALJs allowance decisions were thus evaluated; in the group with the third-highest rates, 50 percent; and in the group with the lowest rates, 25 percent. In addition, the program was expanded so that 15 per-

---

**1.** The Program was announced in Social Security Ruling 82–13. It was described in a memorandum from Louis B. Hayes, Associate Commissioner of the SSA Office of Hearings and Appeals dated September 24, 1982. *See W.C. v. Heckler,* 629 F.Supp. 791, 793 (W.D.Wash.1985).

**2.** The Bellmon Amendment states:

The Secretary of Health and Human Services shall implement a program of reviewing, on his own motion, decisions rendered by administrative law judges as a result of hearings under section 221(d) of the Social Security Act, and shall report to the Congress by January 1, 1982, on his progress.

Social Security Disability Amendment of 1980, Pub.L. No. 96–265, § 304(g), 94 Stat. 441, 456.

**3.** "An ALJ's allowance rate during a given period is the number of claims for benefits he upholds divided by the total number of decisions he issues." *W.C.,* 629 F.Supp. at 793 n. 4.

**4.** "An ALJ's own-motion rate during a given period is the number of his decisions corrected by the Appeals Council on own-motion review divided by the total number of his decisions evaluated for possible own-motion review." *W.C.,* 629 F.Supp. at 793 n. 5.

cent of all allowance decisions by targeted ALJs were formally reviewed by the Appeals Council. Finally, the program was expanded to provide review of a national random sample of ALJ allowance decisions, ALJ decisions referred from the SSA Office of Disability Operations, and decisions of all new ALJs. *W.C.*, 629 F.Supp. 791, 793–94 (W.D.Wash. 1985) (footnotes renumbered).

The plaintiff's action in federal district court alleged that the Program[5] was adopted improperly because of noncompliance with APA notice and comment procedures. The court entered summary judgment in favor of the class[6] on this claim. The Secretary appeals.

ANALYSIS

A. *Merits*

It is undisputed that the Bellmon Review Program was adopted without notice and comment rulemaking. It is also undisputed that the program is a rule under the Administrative Procedures Act and presumptively requires notice and comment rulemaking. 5 U.S.C. §§ 551(4), 553(b) & (c) (1982). Unless it is exempt from such rulemaking, the program is invalid. *See Buschmann v. Schweiker*, 676 F.2d 352, 355–56 (9th Cir.1982).

The Secretary contends that the program merely interprets his long-standing authority to review ALJ decisions on his own motion. The Secretary has the authority, under 20 C.F.R. §§ 404.969 and 404.970 (1986), to review ALJ decisions. *Razey v. Heckler*, 785 F.2d 1426, 1428, *amended by* 794 F.2d 1348 (9th Cir.1986); *Taylor v. Heckler*, 765 F.2d 872, 874–75 (9th Cir. 1985). The Secretary argues that the program enforces this existing authority without altering the class of persons subject to

own-motion review. As such, according to the Secretary, the program was an interpretive rule not requiring notice and comment rulemaking.

■ In determining whether a rule is interpretive or substantive, two factors must be considered. The first factor is whether the rule modifies existing rights, law, or policy. If the rule "effect[s] a change in existing law or policy," *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983), or " 'affect[s] individual rights and obligations,' " *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979), the rule is substantive. *Cubanski v. Heckler*, 781 F.2d 1421, 1426 (9th Cir.1986). If the rule is only indicative of the agency's interpretation of existing law or policy, it is interpretive. *Alcaraz v. Block*, 746 F.2d 593, 611 (9th Cir.1984); *Louisiana-Pacific Corp. v. Block*, 694 F.2d 1205, 1210 (9th Cir.1982).

■ Second, the source of the rule must be considered. If it is promulgated pursuant to statutory direction or under statutory authority, it is a substantive rule. *Cubanski*, 781 F.2d at 1426. If the agency does not exercise delegated legislative power to promulgate the rule, it is interpretive.

■ Under these principles, the Bellmon Review Program was a substantive rule. It changed existing policy. The Secretary's existing own-motion review is codified in 20 C.F.R. §§ 404.969 and 404.970. Under those regulations, decisions from one ALJ were no more likely to be reviewed than those of another. Nor was any class of claimants more likely to be reviewed. Before the review program was implemented, virtually no decisions granting disability benefits were reviewed on the Secretary's own motion. During 1981, no favorable

---

**5.** It appears that the Secretary ceased targeting ALJs for review based on individual allowance rates in early 1983. The district court limited the meaning of "Bellmon Review Program" to the prior version of the program which did target ALJs in this manner.

**6.** The class was defined as:
   All claimants within the state of Washington for Title II Social Security disability benefits

or Title XVI, Supplemental security income benefits who have received (or who received during the pendency of his litigation) decisions from ALJs reversing initial denials of terminations or disability and whose cases are then reviewed by the Appeals Council on its own motion pursuant to the Bellmon Amendment.
*W.C.*, 629 F.Supp. at 794–95.

ALJ decision was subject to own-motion review. *W.C.,* 629 F.Supp. at 809.

The Bellmon Amendment was specifically designed to change this policy. Congress concluded that the Secretary's own-motion review authority was insufficiently exercised and directed him to change this policy. As a result, in 1982, 12,000 favorable decisions were considered for own-motion review under the review program. Of these decisions, 2,200 were actually reviewed. *Id.*

The review program affects existing rights in two ways. First, the district court found that it was designed to alter ALJ decisions. It caused those judges to deny benefits in close cases where benefits might previously have been granted. *Id.* at 799–800. Other courts have reached similar conclusions. *See, e.g., Barry v. Heckler,* 620 F.Supp. 779, 782 (N.D.Cal.1985) (Bellmon Review Program affects impartiality of administrative law judges); *Association of Administrative Law Judges, Inc. v. Heckler,* 594 F.Supp. 1132, 1143 (D.D.C.1984). This conclusion is not clearly erroneous.

Second, the program limits the Secretary's discretion not to review an ALJ decision. Prior to the Bellmon Amendment, the Secretary could review any such determination. Under the program, all decisions from certain "targeted" ALJs must be screened for own-motion review. The Secretary no longer has discretion not to consider those for own-motion review. Rules which substantially limit an agency's discretion are generally substantive rules. *See Guardian Federal Savings & Loan Association v. Federal Savings and Loan Insurance Corp.,* 589 F.2d 658, 666–67 (D.C.Cir.1978).

Here, claimants receiving favorable decisions from targeted ALJs faced mandatory screening for own-motion review. Under prior practice, these decisions would not have been reviewed. They would have become final decisions binding both the Secretary and claimant. *See Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir.1985). The program affects individual rights.

Turning to the source of the rule, we find that it was issued pursuant to statutory direction. The Bellmon Amendment clearly directs the Secretary to formulate a new policy. It provides "The Secretary of Health and Human Services shall implement a program of reviewing, on his own motion, decisions rendered by administrative law judges...." Social Security Disability Amendments of 1980, Pub.L. No. 96–265, § 304(g), 94 Stat. 441, 456. The Secretary, not Congress, formulated the program to select individual cases for own-motion review. Congress specifically omitted any basis for such review in the final amendment. H.R.Rep. No. 944, 96th Cong., 2d Sess. 57, *reprinted in* 1980 U.S. Code Cong. & Admin.News 1392, 1405. It clearly intended that the Secretary use his discretion to enact a review program. In exercising that discretion, the Secretary enacted a substantive rule.

The review program is a substantive rule and, as such, required notice and comment rulemaking. The Secretary's failure to use that procedure, renders the program invalid under the APA.[7]

### B. *Remedy*

The district court concluded that the Appeals Council decisions were void since they were made under an invalid review program. *W.C.,* 629 F.Supp. at 801. The only valid decisions issued were the favorable ones of the ALJs. The Secretary was ordered to reinstate these favorable decisions and pay retroactive disability benefits to the class members. *Id.* at 801–02.

An agency rule which violates the APA is void. *See Buschmann,* 676 F.2d at 355–56. Agency action taken under a void rule has no legal effect. *Id.* But for the review program, it is highly unlikely that the Appeals Council would have reviewed the plaintiffs' favorable decisions. An ALJ

---

7. The Bellmon Review Program, as a substantive rule, also required publication in the Federal Register. 5 U.S.C. § 552(a)(1) (1982). The Secretary did not follow this requirement. The program is also void on this ground.

decision is binding on the parties unless one of the specified avenues of review is properly exercised. 20 C.F.R. § 416.1455. Since no valid review of the ALJ decisions was taken, they became binding. We agree with the district court that those decisions must be reinstated and the claimants provided disability benefits.[8]

This remedy does not encroach on the Secretary's fact-finding role. It does not determine, as a matter of fact, whether a claimant is entitled to disability benefits but merely vacates an invalid agency action. *Compare Bowen v. City of New York,* — U.S. —, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986).

Appellee has indicated that it intends to seek attorneys fees presumably for both the appeal and the action in district court. The request should be made to the district court.

AFFIRMED.

---

**8.** Reinstating the ALJ decisions does not conclusively place ineligible recipients forever on the social security rolls. In 1984, Congress established procedures that the Secretary must follow to terminate previously awarded benefits. 42 U.S.C. § 1382c(a)(5) (1983), (Supp.1986). This act permits terminating benefits if substantial evidence demonstrates that a prior determination awarding benefits was in error. 42 U.S.C. §§ 1382c(a)(5)(D) (1983) (Supp.1986).

The act overrules the presumption of continuing disability under *Patti v. Schweiker,* 669 F.2d 582, 586–87 (9th Cir.1982). *Warren v. Bowen,* 804 F.2d 1120 (9th Cir.1986). Thus, under his existing authority, the Secretary may have authority to review plaintiffs' continuing eligibility for benefits.

Beyond noting this possibility, we intimate no view whether any class member is or is not entitled to benefits.