Dennis W. BOHNER, Petitioner,

v.

Charles A. DANIELS,[1] Respondent.

No. CIV.99–1116–HA.

United States District Court,
D. Oregon.

Feb. 6, 2003.

---

1. This petition was originally filed against one of the previous Wardens, Robert Hood or Joseph Crabtree. Charles A. Daniels is the current Warden of FCI in Sheridan and is substituted as a party to this action.

Stephen R. Sady, Chief Deputy Federal Defender, Portland, for Petitioner.

Michael W. Mosman, United States Attorney, Kenneth C. Bauman, Assistant U.S. Attorney, Portland, for Respondent.

## OPINION and ORDER

HAGGERTY, Chief Judge.

The Ninth Circuit reversed this court's denial of petitioner's motion to amend his habeas corpus petition to include a claim under the Administrative Procedures Act (APA) (docs.# 24, 31). Accordingly, petitioner's motion to amend his habeas corpus petition (doc. # 17) is GRANTED, and the court will consider petitioner's habeas corpus petition as having been so amended. *See* Fed.R.Civ.P. 15(b); *Dunn v. Trans World Airlines, Inc.,* 589 F.2d 408, 412–13 (9th Cir.1978). The petition for habeas corpus, as amended, is GRANTED.

## BACKGROUND

18 U.S.C. § 3621(b) directs the Bureau of Prisons (BOP) to provide substance abuse treatment to those prisoners who have a "treatable condition of substance addiction or abuse." As an incentive for prisoners to seek treatment, Congress made one-year sentence reductions available to prisoners convicted of nonviolent offenses who completed the substance abuse treatment programs. 18 U.S.C. § 3621(e)(2)(B).

Prior to 1997, the BOP's implementing regulation and program statements defined "nonviolent" offense to exclude any conviction accompanied by the possession of a firearm or other dangerous weapon. The Ninth Circuit rejected such an interpretation, holding that the BOP cannot define "nonviolent offense" to exclude firearm possession when Congress defines "nonviolent offense" in precisely the opposite way. *Davis v. Crabtree,* 109 F.3d 566, 569 (9th Cir.1997); *see also Downey v. Crabtree,* 100 F.3d 662, 667 (9th Cir.1996).

In response, the BOP amended its regulation and program statements governing prisoners' eligibility for early release. *See* 28 C.F.R. 550.58; P.S. 5162.04 (Oct. 9, 1997); P.S. 5330.10 (Oct. 9, 1997) (the "1997 rule and program statements"). Relying instead on its discretion rather than on an interpretation of the term "nonviolent offense," the BOP's 1997 rule and program statements excluded exactly the same prisoners from early release eligibility who were ineligible under the old rules. *Id.* The courts upheld this exercise of the

BOP's discretion. *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001); *Bowen v. Hood*, 202 F.3d 1211 (9th Cir.2000), *rev'g Gavis v. Crabtree*, 28 F.Supp.2d 1264 (D.Or.1998) (holding that the BOP's new interpretation conflicted with the unambiguously expressed intent of Congress, meriting no deference).

In this case, petitioner Bohner, among 51 others, raises APA challenges to the BOP's 1997 regulation and program statements. The case returns to this court following the Ninth Circuit's decision in *Grier v. Hood*, holding that it would not have been futile to allow petitioners to amend their petitions to add the APA challenges. 46 Fed.Appx. 433 (9th Cir.2002).

## DISCUSSION

### 1. *Jurisdictional Challenges*

During the lengthy procedural history of this case, many of the prisoners have been released from the physical custody of the BOP and are serving their terms of supervised release outside the District of Oregon. For example, petitioner Bohner now resides in the District of Hawaii. The government raises various jurisdictional challenges to granting relief to those petitioners who are outside the District of Oregon and who have been released.

### a. *Subject Matter Jurisdiction Under 28 U.S.C. § 2241*

A petition for writ of habeas corpus under 28 U.S.C. § 2241 may be filed only in the district court with "jurisdiction over the prisoner or his custodian." *Andrino v. United State Bd. of Parole*, 550 F.2d 519, 520 (9th Cir.1977). The proper respondent is the petitioner's immediate custodian. *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir.1992) At the time petitioner filed his writ, he was an inmate at the Federal Correctional Institution (FCI) in Sheridan, Oregon, and Robert A. Hood was the warden. Since filing the writ,

however, petitioner has finished serving his sentence and is now serving a term of supervised release in the District of Hawaii, where he was convicted. The government contends that the federal habeas corpus statute fails to provide petitioner Bohner with subject matter jurisdiction because this court "lost" jurisdiction when he was released from the custody of the BOP.

■ This court maintains subject matter jurisdiction over the petition. In *Carafas v. LaVallee*, the Supreme Court considered the habeas petition of a petitioner who had been released from state custody prior to his case being heard. 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The Court concluded that "under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Id.* at 238. Notwithstanding petitioner's release from physical custody of the BOP, he is still considered to be "in custody" for purposes of his habeas corpus petition. *See Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (concluding that the petitioner was in custody for purposes of the habeas corpus statute because he is subject to restraints "not shared by the public generally") (quoting *Jones v. Cunningham*, 371 U.S. 236, 240, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)). Because petitioner continues to serve his term of supervised release, he satisfies the custody requirement of 28 U.S.C. § 2241. *See Williamson v. Gregoire*, 151 F.3d 1180, 1182–83 (9th Cir.1998).

The government argues petitioner's case is distinguishable because not only has he been released from the physical custody of the BOP, but .he is serving his term of release in Hawaii—outside the jurisdiction of the District of Oregon. As stated

above, subject matter jurisdiction attached when petitioner filed his habeas petition while an inmate in the state of Oregon. The fact that he is now in Hawaii is relevant only to the issue of mootness, considered below.

### b. Mootness

"A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, Section 2, of the Constitution." *United States v. Verdin,* 243 F.3d 1174 (9th Cir.2001). A case is moot unless the parties "continue to have a personal stake in the outcome of the lawsuit" through all stages of the judicial proceedings. *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). In the habeas context, "the question is not whether the precise relief sought at the time the application [for the writ] is still available. The question is whether there can be any effective relief." *West v. Secretary of Dept. of Transportation,* 206 F.3d 920, 925 (9th Cir.2000).

▮ This court already considered whether the fact that a petitioner was no longer in the physical custody of the BOP rendered his petition moot. *Gavis,* 2001 WL 34039136 at *1 (ruling upon numerous petitions, including those of Gavis and Bohner). The case was not moot because a favorable ruling would have benefitted the petitioner under 18 U.S.C. § 3583(e), which "allows a sentencing court to change the term (duration) of supervised release by 'terminating a term of supervised release ... at any time after the expiration of one year of supervised release,' 18 U.S.C. § 3583(e)(1) ...'" *Id.* (citing *Gunderson v. Hood,* 268 F.3d 1149, 1153 (9th Cir.2001)). While it is true that if petitioner receives a favorable outcome in this court, 18 U.S.C. § 3583(e) requires a subsequent petition to his sentencing court, the possibility that the sentencing court would reduce a term of supervised release

is not speculative under *Gunderson,* and the case is not moot. *See Grier,* 46 Fed. Appx. at 433 (impliedly finding petitioner's petition not moot by reviewing this court's *Gavis* decision).

### 2. Petitioner's APA Challenge to the BOP's Rule & Program Statements

Petitioner completed the substance abuse program, but based upon the 1997 rule and program statements, the BOP did not grant him early release. He challenges his denial of eligibility for early release, asserting that, in issuing the 1997 rule and program statements, the BOP failed to comply with the APA.

#### a. The 1997 Rule Violates the APA

#### i. Failure to Comply with Notice and Comment Requirements

In *Grier v. Hood,* the Ninth Circuit reversed this court's denial of petitioner Gavis' (among others) motion to amend his petition to add APA challenges to the 1997 rule and program statements. *Grier,* 46 Fed.Appx. at 433. First, the court ruled that Fed.R.Civ.P. 15(b)'s requirement that the parties exhibited "express or implied consent" to an amendment of the petition for writ of habeas corpus was met. *Id.* at 439. Further, there was no requirement that petitioner exhaust his administrative remedies. *Id.*

Of particular importance to the disposition of this case, however, the Ninth Circuit observed in *Grier* that petitioner's amendment to his petition would not have been futile because it was clear from the record that the BOP violated 5 U.S.C. § 553(d)'s requirement that an agency publish a substantive rule "not less than 30 days before its effective date," subject to certain exceptions:

Based on the undisputed facts as to the procedural history of the rule promul-

gation, it is apparent that the procedures utilized to adopt the regulation did not comply with the APA. The Bureau violated the APA's thirty-day advance notice requirement by making the 1997 regulation effective as of October 9, 1997, rather than as of November 14, 1997, thirty days after the October 15, 1997 publication in the Federal Register. Thus, based on the undisputed facts, the requirements of the APA were not observed.

*Id.* at 440. Recognizing that "[t]he BOP does not dispute [that its rule violated the thirty-day advance notice requirement], but argues that statutory exceptions apply," the Ninth Circuit remanded the case to this court for any further factual development that may be needed and to determine whether the statutory exceptions to the thirty-day advance notice requirement apply. *Id.*

The exceptions to Section 553(d)'s advance notice requirement may or may not apply. Regardless, petitioner argues that the BOP also violated Section 553(b)'s mandate that "[g]eneral notice of proposed rulemaking shall be published in the Federal Register." 5 U.S.C. § 553(b). In other words:

> Subsection (d) requires publication of rules not less than thirty days prior to their effective date and then provides a good cause exception in subsection (d)(3). *Before that exception becomes relevant, however, the agency must first justify abandoning the requirement of prior notice and comment* pursuant to subsection (b)(B).

*Western Oil & Gas Ass'n v. United States Envtl. Prot. Agency,* 633 F.2d 803, 811–12 (9th Cir.1980) (emphasis added). In contrast to the 30–day waiting period mandated by Section 553(d), which is designed to give affected parties time to adjust their behavior before the rule takes effect, Section 553(b)'s general notice requirement serves separate policy goals:

> The purpose [of Section 553(b) ] is both (1) to allow the agency to benefit from the expertise and input of the parties who file comments with regard to the proposed rule, and (2) to see to it that the agency maintains a flexible and open-minded attitude towards its own rules, which might be lost if the agency had already put its credibility on the line in the form of "final" rules.

*National Tour Brokers' Ass'n v. United States,* 591 F.2d 896, 902 (D.C.Cir.1978); *see also Buschmann v. Schweiker,* 676 F.2d 352, 357 (9th Cir.1982) (observing that the notice and comment procedures protect "the right of the people to present their views to the government agencies which increasingly permeate their lives" and that "the interchange of ideas between the government and its citizenry provides a broader base for intelligent decision-making and promotes greater responsiveness to the needs of the people ....").

The BOP's violation of Section 553(b) is just as apparent as its violation of Section 553(d). The BOP referred to the 1997 rule as an "interim rule" and invited the public to submit comments. 62 Fed.Reg. 53690–01. As is the case with most interim rules, its effective date was immediate—indeed, the BOP published nothing in the Federal Register until October 15, 1997, while the effective date of the regulation was October 9, 1997. *Id.* The issue for the court, then, is whether any statutory exceptions to Section 553(b)'s notice and comment requirements apply.

ii. *The Statutory Exceptions to Section 553(b) Do Not Apply*

Section 553(b) of the APA provides only two exceptions to its general notice requirement of proposed rulemaking:

Except when notice or hearing is required by statute, the subsection does not apply—(A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice; or (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(b)(3). As to Subsection (A), it has already been established that the 1997 rule was not an interpretive rule or a general statement of policy. *Gunderson*, 268 F.3d at 1154; *Grier*, 46 Fed.Appx. at 440.

■ The "good cause exception" in Section 553(b)(3)(B) also does not apply. To invoke the good cause exception, an agency must determine that compliance with notice and comment requirements is "impracticable, unnecessary or contrary to the public interest. It must then include this finding and a short statement of reasons with the new regulations." *Buschmann*, 676 F.2d at 356 (quoting *Kelly v. United States Dep't of the Interior*, 339 F.Supp. 1095, 1101 (E.D.Cal.1972)); *accord Service Employees Int'l Union, Local 102 v. County of San Diego*, 60 F.3d 1346, 1353 n. 3 (9th Cir.1994) (finding agency had not violated notice and comment provisions through publication of interim rule when good cause exception expressly invoked). Nowhere in its notice in the Federal Register did the BOP explain that in fact it was invoking the good cause exception nor why notice and comment procedure was impracticable, unnecessary, or contrary to the public interest. *See* 62 Fed.Reg. 536900 (Oct. 15, 1997). The BOP merely stated that it "is publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates." *Id.* It provided no explanation

of why such a departure was necessary or why other solutions were impracticable. This court need not consider the BOP's current justifications for departing from the APA's procedural requirements when it published none with the rule six years ago. The BOP failed to invoke the good cause exception when it promulgated the 1997 regulation, and it failed to explain why it was impracticable, unnecessary, or contrary to the public interest. These procedural errors alone invalidate the regulation. *Buschmann*, 676 F.2d at 356; *see also W.C. v. Bowen*, 807 F.2d 1502, 1505 (9th Cir.1987) (stating that an "agency rule which violates the APA is void," and that "[a]gency action taken under a void rule has no legal effect").

iii. *APA Violations Not Harmless Error Under 5 U.S.C. § 706*

The BOP argues that even if the rule failed to comply with the APA, any violation was harmless under 5 U.S.C. § 706. Section 706 provides for the scope of judicial review to agency decisions: "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." An agency may rely upon harmless error "only when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of the decision reached." *Buschmann*, 676 F.2d. at 358 (citing *Braniff Airways v. C.A.B.*, 379 F.2d 453, 466 (D.C.Cir.1967) (finding that an agency decision unsupported by substantial evidence is not harmless error)). The Ninth Circuit cautions that "great caution" must be exercised in applying the harmless error rule in the administrative rulemaking context:

The reason is apparent: Harmless error is more readily abused there than in the civil or criminal trial context. An agency is not required to adopt a rule that conforms in any way to the comments presented to it. So long as it explains

its reasons, it may adopt a rule that all commentators think is stupid or unnecessary. Thus, if the harmless error rule were to look solely to result, an agency could always claim that it would have adopted the same rule even if it had complied with the APA procedures. To avoid gutting the APA's procedural requirements, harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result.

*Riverbend Farms, Inc. v. Madigan,* 958 F.2d 1479, 1487 (9th Cir.1992). Accordingly, courts have found harmless error where failure to comply with notice and comment requirements had no effect because interested parties had actual notice and had submitted comments regardless. *See, e.g., Sagebrush Rebellion, Inc., v. Hodel,* 790 F.2d 760, 765–67 (9th Cir.1986).

The BOP has failed to show that its noncompliance with Section 553(b)'s notice and comment requirements had no bearing on the procedures used or the substance of the decision reached, and it has submitted no evidence to support its claim of harmless error. Its claim of harmless error has no merit.

*b. The 1997 Program Statements Do Not Exclude Petitioner from Eligibility Where the 1997 Rule Is Invalid*

The BOP asserts that even if the 1997 rule is invalid, the 1997 program statements provide independent grounds for excluding petitioner from eligibility for early release. Deciding this issue requires a review of the apparently conflicting precedents governing the outcome of this case.

The Ninth Circuit's *Bowen* decision upheld the BOP's 1997 rule and program statements governing the administration of the substance abuse treatment program as a valid exercise of the BOP's discretion. The *Bowen* decision also disposed of the grounds upon which this court had granted relief in *Grassi v. Hood*—yet another case challenging the BOP's administration of the substance abuse treatment program. 251 F.3d 1218 (9th Cir.2001), *rev'g* 1999 WL 1279726 (D.Or.). On appeal, and in response to *Bowen,* petitioner Grassi asked the Ninth Circuit to affirm on alternate grounds, namely that the BOP promulgated its interim regulation (but not the program statements) in violation of the APA. Without addressing whether the APA claim was properly raised and assuming that it was, the Ninth Circuit stated:

> Even if the 1997 interim regulation were invalid because the BOP did not comply with the "notice and comment" requirements of the APA, the program statement, which predated the amended rule, would remain viable. The 1997 program statement never was rescinded, nor is it expressly superseded by the later 1997 interim regulation. Thus, a holding that the amended rule was invalid on procedural grounds would have no effect on the continuing validity of the earlier-published program statement. Under *Bowen,* the denial of Petitioner's request for early release was proper under the program statement, notwithstanding the BOP's alleged failure to comply with the APA with respect to the 1997 interim rule. Accordingly, regardless of the outcome of Petitioner's challenge to the interim rule under the APA, he is ineligible for early release. In the circumstances, we decline to issue an advisory opinion on the procedural validity of the 1997 amended rule.

*Grassi,* 251 F.3d at 1221–22.

This would appear to be direct precedent governing the outcome of this case.[2]

**2.** This court relied upon the reasoning of *Grassi* in *McKenzie v. Hood,* Civ. No. 01–

1196–HA, without addressing its inherent conflict with *Gunderson* because there were

According to *Grassi*, regardless of the invalidity of the BOP's 1997 rule, its 1997 program statement (PS 5162.04) stands. That is not the end of the issue, however. The *Bowen* decision also affected other pending cases. In *Gunderson v. Hood*, this court vacated judgment and stayed the case pending the Ninth Circuit's mandate in *Bowen*. 123 F.Supp.2d 1219, 1220 n. 1 (D.Or.2000). Petitioner Gunderson moved to lift the stay on grounds that the new program statements conflicted with the BOP's new regulation, denying him a benefit that the regulation standing alone would not. *Id.* at 1220–21. Affirming this court's denial of relief to petitioner Gunderson, the Ninth Circuit held that "[b]ecause, in this instance, Program Statement 5162.04 did no more than clarify or explain existing law, it was interpretive and thus not subject to the rigors of the APA." *Gunderson v. Hood,* 268 F.3d 1149, 1155 (9th Cir.2001).

In short, the Ninth Circuit held in *Grassi* and in *Gunderson*—two cases following the *Bowen* decision—that (1) petitioner Grassi's challenge to the BOP's new regulation would not be entertained because the program statement would have continuing validity apart from the regulation; and (2) petitioner Gunderson's challenge to the program statement failed because it merely interpreted the regulation, having no substantive effect by itself.

Against this backdrop, the Ninth Circuit reversed this court's denial of petitioner Gavis' motion to amend, stating that it would not have been futile because it appeared the BOP violated the APA. *See Grier v. Hood,* 46 Fed.Appx. 433, 2002 WL 1997873 (9th Cir.2002). *Grier* did not, however, explain why it mattered that the regulation violated the APA given *Gras-*

*si*'s observation that the program statements would survive regardless of whether the regulation complied with the APA. *Id.* at 440–41 (Beezer, J. concurring) (leaving it to the district court to harmonize the precedent and suggesting that *Grassi*'s discussion of the program statements is dicta).

*Grassi*'s discussion of the program statements is not dicta. According to *Grier*, the record showed Fed.R.Civ.P. 15(b)'s requirements to amend the habeas corpus petitions were met. The district court pleadings in *Grassi* were identical in substance to the pleadings reviewed in *Grier*. *See Gavis*, 2001 WL 34039136 at *3 n. 3. Therefore, the *Grassi* panel need not have assumed that the validity of the 1997 regulation was properly before it because according to *Grier*, on the exact same record, the APA issues had been impliedly raised by the parties in front of the district court. Therefore, the validity of the regulation was properly before it. Faced with the issue, *Grassi* declined to analyze the regulation under the APA, holding instead that regardless of whether the 1997 regulation violated the APA, the program statement has continuing validity. This reasoning is not dicta because it was necessary to decide an issue in the case. *See United States v. Henderson,* 961 F.2d 880, 882 (9th Cir.1992) (defining dicta as language unnecessary to a court's holding). *Grassi*'s holding is in direct conflict with *Gunderson*'s holding that the program statement merely interprets the regulation, and thus the program statement cannot be viable on its own. The precedents cannot be reconciled, and the court is without power to decide which should govern. *Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d

alternative grounds upon which the court believed relief was inappropriate, namely that petitioner had failed to exhaust his administrative remedies. The Ninth Circuit's opinion in *Grier* eliminated these alternative grounds. *Grier*, 46 Fed.Appx. at 440. Accordingly, *Grassi*'s conflict with *Gunderson* can no longer be ignored.

1477, 1478 (9th Cir.1987) (appropriate mechanism for resolving an irreconcilable panel conflict is an en banc decision).

■ Fortunately, it is unnecessary to harmonize the precedents at this point because whether *Grassi* or *Gunderson* controls, only one outcome is possible: the program statements may not be used to deny petitioner early release. First, if *Grassi* is correct, the 1997 program statements would deny petitioner a sentence reduction independent of the 1997 rule. If so, the program statements should have been classified as legislative rules, and promulgated in compliance with the APA's notice and comment procedures. Because they were not, they may not be relied upon to deny petitioner early release. Alternatively, if *Gunderson* is correct, the 1997 program statements merely interpret the 1997 rule. It has already been determined above that the 1997 rule was invalid, so there is no rule left for the 1997 program statements to interpret. Again, the 1997 program statements may not be relied upon to deny petitioner early release.

## CONCLUSION

The motion to amend the petition (doc. # 17) is GRANTED. For the foregoing reasons, the petition for writ of habeas corpus, as amended (doc. # 2), is also GRANTED. Petitioner, who is now serving a term of supervised release, shall be treated as having been categorically eligible for the sentence reduction.

IT IS SO ORDERED.