**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLARENCE I. PAULSEN, III,
      *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden, of
FCI Sheridan,
      *Respondent-Appellant.*

No. 03-35337

D.C. No.
CV-99-01746-HA

JEFFREY D. PULLINS,
      *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden,
      *Respondent-Appellant.*

No. 03-35360

D.C. No.
CV-00-00174-HA

DENNIS W. BOHNER,
      *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden,
      *Respondent-Appellant.*

No. 03-35356

D.C. No.
CV-99-01116-ALH

RANDOLPH BROWN,
      *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden,
      *Respondent-Appellant.*

No. 03-35355

D.C. No.
CV-01-01250-ALH

7585

JEREMY E. JAMES,
          *Petitioner-Appellee,*

                    v.

CHARLES A. DANIELS, Warden,
          *Respondent-Appellant.*

No. 03-35354
D.C. No.
CV-99-00872-ALH


KARLOS LAMAR GRIER,
          *Petitioner-Appellee,*

                    v.

JOSEPH CRABTREE, Warden, Federal
Correction Instution, Sheridan,
OR,
          *Respondent-Appellant.*

No. 03-35352
D.C. No.
CV-98-01544-ALH


SHAWN ROBERT LEE,
          *Petitioner-Appellee,*

                    v.

ROBERT HOOD,
          *Respondent-Appellant.*

No. 03-35351
D.C. No.
CV-99-01747-HA


ADRIAN L. JOHNSON,
          *Petitioner-Appellee,*

                    v.

CHARLES A. DANIELS, Warden,
          *Respondent-Appellant.*

No. 03-35350
D.C. No.
CV-99-00802-HA

SABIL M. MUJAHID,
    *Petitioner-Appellee,*

    v.

CHARLES A. DANIELS, Warden,
    *Respondent-Appellant.*

No. 03-35349

D.C. No.
CV-99-00199-HA

JACOB JONES,
    *Petitioner-Appellee,*

    v.

CHARLES A. DANIELS, Warden,
    *Respondent-Appellant.*

No. 03-35347

D.C. No.
CV-99-00518-ALH

VINCENTE SUBIA,
    *Petitioner-Appellee,*

    v.

CHARLES A. DANIELS, Warden,
    *Respondent-Appellant.*

No. 03-35346

D.C. No.
CV-99-00011-ALH

JASON ROBERT TUITE,
    *Petitioner-Appellee,*

    v.

ROBERT A. HOOD, Warden,
    *Respondent-Appellant.*

No. 03-35344

D.C. No.
CV-01-01259-ALH

SEAN MOORE,
    *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden,
    *Respondent-Appellant.*

No. 03-35343
D.C. No.
CV-99-00596-ALH

EARL LEONARD,
    *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden,
    *Respondent-Appellant.*

No. 03-35341
D.C. No.
CV-00-00888-ALH

CHARLES R. NORGAARD,
    *Petitioner-Appellee,*

v.

CHARLES A. DANIELS, Warden,
    *Respondent-Appellant.*

No. 03-35340
D.C. No.
CV-01-01094-HA

ROBERT ALLEN FURNAS,
    *Petitioner-Appellee,*

v.

CHARLES A. DANIEL, Warden,
    *Respondent-Appellant.*

No. 03-35339
D.C. No.
CV-99-00795-HA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
April 11, 2005—San Francisco, California

Filed June 27, 2005

Before: Robert R. Beezer, Sidney R. Thomas, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Thomas;
Concurrence by Judge Beezer

## COUNSEL

Thomas M. Gannon, Department of Justice, Criminal Division, Washington, D.C., for the respondents-appellants.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for the petitioners-appellees.

## OPINION

THOMAS, Circuit Judge:

We consider in this appeal whether the Bureau of Prisons ("Bureau") violated the Administrative Procedure Act ("APA") in adopting an interim regulation pertaining to an early release incentive program for federal prisoners who had successfully completed a substance abuse program. We conclude that the district court correctly held that the Bureau violated the APA, and that the petitioners were entitled to relief.

I

This appeal is the latest chapter in a series of cases concerning a program created by Congress for the purpose of supplying substance abuse treatment to prisoners. In 1990, faced with a burgeoning federal prison population incarcerated for drug-related offenses and evidence that prison substance abuse treatment programs sharply reduce recidivism, Congress required the Bureau to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Crime Control Act of 1990, Pub. L. 101-647, § 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C. § 3621(b)). Concerned by an apparent lack of program interest, Congress amended the statute in 1994 to provide federal prisoners with incentives to complete a Bureau substance abuse treatment program by authorizing the reduction of incarceration for prisoners "convicted of a nonviolent offense" who successfully completed such a program. The incentive provision reads: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." Violent Crime Control and Law Enforcement Act of 1994,

Pub. L. 103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C. § 3621(e)(2)(B)).

The Bureau published a regulation to implement the early release incentive one year later. The Bureau defined prisoners who had not been convicted of a nonviolent offense and thus were ineligible for early release as those prisoners who were currently incarcerated for committing a crime of violence as defined in 18 U.S.C. § 924(c)(3). 28 C.F.R. § 550.58 (1995); *see* 60 Fed. Reg. 27,692, at 27,695. Following the promulgation of the 1995 regulation, the Courts of Appeals reached differing conclusions on the question of whether the Bureau had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses. *See Lopez v. Davis*, 531 U.S. 230, 234-35 (2001).

In light of the split among the Circuits, the Bureau promulgated an interim regulation, which is the subject of this litigation, on October 15, 1997 and made the regulation effective approximately one week prior, on October 9, 1997. 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed. Reg. 53,690. The 1997 interim regulation, like the one it superceded, made ineligible for the early release incentive those prisoners currently incarcerated for an offense that involved the possession, use, or carrying of a firearm. 28 C.F.R. § 550.58(a)(1)(vi)(B). The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed. Reg. at 53,690, rather than defining the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

The commentary accompanying the 1997 interim regulation noted that the Bureau was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified

inmates." 62 Fed. Reg. at 53,690. However, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates, including the petitioners. The commentary further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken. *Id.*

On December 22, 2000, the Bureau replaced the 1997 interim regulation with a final regulation, which adopted the 1997 regulation without change. *See* 65 Fed. Reg. 80,745. The commentary accompanying the final regulation noted that the Bureau had received approximately 150 comments from individuals and organizations, 138 of them identical. *Id.* at 80,747. The Bureau's summary of those comments did not mention any challenge by any commenter to the procedural regularity of the 1997 regulation. *See id.* at 80,747-80,748.

The petitioners are a group of sixteen prisoners or former prisoners who were convicted of various offenses involving the carrying, possession, or use of firearms, and who were sentenced to terms of imprisonment, at least in part, at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). Between December 1997 and October 2000, while the petitioners were serving their terms of imprisonment at FCI Sheridan, they were informed that they were eligible to participate in the Bureau's in-prison substance abuse treatment program. The petitioners were further informed that because their offenses involved the carrying, possession, or use of firearms, they were not eligible for early release under the Bureau's 1997 interim regulation. Between December 1998 and August 2001, the petitioners filed for habeas corpus relief under 28 U.S.C. § 2241, asserting that they were categorically eligible for a sentence reduction for participation in the treatment program under 18 U.S.C. § 3621(e).

After we issued our decision in *Bowen v. Hood*, 202 F.3d 1211 (9th Cir. 2000) — in which we held that the Bureau, in

its 1997 interim regulation, validly exercised its discretion in making prisoners who were convicted of an offense involving the carrying, possession, or use of a firearm ineligible for the early release incentive — the petitioners moved for leave to amend their habeas petitions to add a claim challenging the procedural regularity of the 1997 regulation. The United States District Court for the District of Oregon denied the motions and dismissed the petitions. *See Gavis v. Hood*, 2001 WL 34039136 (D. Or. 2001). We reversed the district court in *Grier v. Hood*, 46 Fed. Appx. 433, 440 (9th Cir. 2002), holding that the petitioners should have been allowed to amend their habeas petitions pursuant to Fed. R. Civ. P. 15(b), as allowing such amendments would not be futile.

In *Bohner v. Daniels*, 243 F. Supp.2d 1171 (D. Or. 2003), the district court on remand considered the petition of Dennis W. Bohner and held that the Bureau's 1997 regulation violated section 553(b) and (d) of the APA,[1] the APA violations

---

[1]5 U.S.C. § 553 provides, in relevant part:

(b)   General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1)   a statement of the time, place, and nature of public rule making proceedings;

(2)   reference to the legal authority under which the rule is proposed; and

(3)   either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A)   to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B)   when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

were not harmless under 5 U.S.C. § 706, and therefore the regulation was invalid. *Id.* at 1175-77. The district court granted the petitioner's motion to amend his habeas petition and granted his petition for a writ of habeas corpus. *Id.* at 1179. Following the reasoning in *Bohner*, the district court ordered habeas relief for the remainder of the petitioners. These timely appeals followed. In December 2003, we ordered the appeals in the cases of all sixteen petitioners consolidated.

## II

### A

**[1]** The Bureau plainly violated the APA in its promulgation of the 1997 interim regulation. The APA requires agencies to follow certain procedures when it decides to issue a rule, including: (1) publishing notice of the proposed rulemaking in the *Federal Register*, 5 U.S.C. § 553(b); (2) providing a period for interested persons to comment on the proposed rule, which comments will be considered by the agency prior to adopting the rule, *id.* at § 553(c); and (3) publishing the adopted rule not less than thirty days before its effective date, with certain exceptions that are not applicable here, *id.* at § 553(d).

---

. . .

(d)　The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

　(1)　a substantive rule which grants or recognizes an exemption or relieves a restriction;

　(2)　interpretative rules and statements of policy; or

　(3)　as otherwise provided by the agency for good cause found and published with the rule.

**[2]** "In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment." *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *see also Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992) ("[T]he notice and comment requirements . . . are designed to ensure public participation in rulemaking."). It is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later. The district court correctly concluded that the Bureau violated § 553(b) and (d). *Bohner*, 243 F. Supp.2d at 1175.[2]

B

**[3]** Although the Bureau does not seriously contest that it violated the APA in promulgating the 1997 interim rule, it argues that the petitioners lack standing to challenge the rule. "To satisfy the injury in fact requirement, a [petitioner] asserting a procedural injury must show that 'the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.' " *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.8 (1992)). The Bureau argues that petitioners cannot demonstrate that they suffered an injury in fact, contending that petitioners' only concrete interest was in receiving advance notice of the Bureau's promulgation of the interim rule and having an opportunity to comment on the rule before it was applied to them. The Bureau argues that this requirement was satisfied because each petitioner had at least thirty days notice between when the 1997 regulation was made effective and when the regulation was applied to him.

---

[2]Although in oral argument Daniels seemed to question whether the APA was violated, Daniels did not raise this issue in his opening brief; therefore, Daniels has waived this issue. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").

**[4]** The Bureau's 1997 interim regulation was made effective prior to its publication in the Federal Register. Although the Bureau solicited comments, those comments were not taken into account before the 1997 interim regulation was made effective; rather, these comments were considered prior the promulgation of the 2000 final regulation. These procedural violations of the APA threatened petitioners' concrete interest to have the public participate in the rulemaking that made them ineligible for a sentence reduction. The effect of the regulation was to deny them sentence reduction. The petitioners clearly have sustained an injury in fact affording them standing to file their habeas petitions.[3]

C

**[5]** The Bureau contends that its violations of the APA's notice and comment requirements were harmless because no petitioner was advised of his ineligibility for early release under the 1997 interim regulation until after a reasonable advance notice-and-comment period would have expired, had the Bureau complied with the APA. The APA requires us to take "due account" of the harmless error rule. *See* 5 U.S.C. § 706; *Riverbend*, 958 F.2d at 1487. However, as we stated in *Riverbend*, we:

must exercise great caution in applying the harmless

---

[3]The Bureau also contends that we lack jurisdiction over petitioner Bohner's appeal because he is now serving a term of supervised release outside the District of Oregon. The Bureau is mistaken. "[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (quoting *Santillanes v. United States Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)) (internal quotations marks omitted). The Bureau also argues that Bohner's case is moot. However, it concedes the possibility that Bohner's term of supervised release might be reduced or modified as a result of the decision; therefore, this case is not moot as to Bohner. *Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001).

error rule in the administrative rulemaking context. The reason is apparent: Harmless error is more readily abused there than in the civil or criminal trial context. An agency is not required to adopt a rule that conforms in any way to the comments presented to it. So long as it explains its reasons, it may adopt a rule that all commentators think is stupid or unnecessary. Thus, if the harmless error rule were to look solely to result, an agency could always claim that it would have adopted the same rule even if it had complied with the APA procedures. To avoid gutting the APA's procedural requirements, harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result. We have held that the failure to provide notice and comment is harmless only where the agency's mistake "clearly had no bearing on the procedure used or the substance of decision reached."

958 F.2d at 1487 (quoting *Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760, 764-65 (9th Cir. 1986)).

**[6]** Here, the Bureau's mistake clearly had a bearing on the procedure used. The Bureau's violation of the APA was not merely technical; the Bureau failed to provide the required notice-and-comment period before effectuating the 1997 interim regulation, thereby precluding public participation in the rulemaking. Therefore, the situation here is not similar to situations that were before us in *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995), *Riverbend*, or *Sagebrush Rebellion*, in which we found harmless error.

In *Idaho Farm Bureau*, we held that the Fish and Wildlife Service's ("FWS") failure to abide by the Endangered Species Act ("ESA") and give actual notice of the proposed regulation — the listing of the Bruneau Hot Springs Snail as an endangered species under the ESA — to the Commissioner of one county in which the Springs Snail was believed to inhabit was

a harmless error under the APA. *Id.* at 1405. The failure to provide actual notice to the Commissioner was harmless because, although the Commissioner did not receive actual notice, he was aware of the proposed regulation, as demonstrated by his presenting a petition opposing the listing and testifying at the public hearings on the matter. *Id.* Therefore, the FWS's procedural violation had no bearing on the procedure used, rendering the FWS's mistake harmless.

In *Riverbend*, we considered the claim of a group of domestic handlers of navel oranges who challenged the procedure used by the Secretary of Agriculture to regulate the navel orange market. 958 F.2d at 1482-83. We determined that the Secretary's rulemaking failed to satisfy the APA's requirements because (1) the Secretary did not demonstrate good cause for failing to give sufficient notice in the *Federal Register* of the weekly Naval Orange Administrative Committee ("NOAC") meetings in which NOAC settles on what recommendation to give to the Secretary for the following week's volume restrictions; and (2) the Secretary failed to allow the public to comment by means other than personal participation at the NOAC meetings. *Id.* at 1487. We provided the following explanation as to why the Secretary's error was harmless:

> all parties before us knew the ground rules: that there would be an annual position paper setting proposed weekly volume restrictions; that the NOAC would meet every Tuesday during the season; that the starting point for debate at those Tuesday meetings would be the figure listed for that week in the annual position paper (or in the NOAC's updated versions of it); that there would be opportunity for public comment at the Tuesday meetings; and that the final volume restrictions would be issued by the Secretary soon afterwards. This system of regulation existed for decades without challenge; it was only after some handlers ran into trouble with the Department of Agriculture that, in looking for an escape, they came

up with this challenge. While they are right that the Secretary must comply with some of the APA's technical requirements, their belated challenge is evidence of the lack of prejudice resulting from the Secretary's failure to do so in the past thirty-five years.

*Id.* at 1487-88 (footnotes omitted).

In *Sagebrush Rebellion*, we determined that the notice provided by the Secretary of the Interior concerning the proposed withdrawal of the Snake River Birds of Prey National Conservation Area from the operation of the public and mining laws was technically deficient under the Federal Land Policy and Management Act of 1976, drawing on the standard for sufficiency of notice of rulemaking under the APA. 790 F.2d at 764. Nonetheless, we decided that the notice's failure to state that the lands might be withdrawn by administrative action, which would limit the withdrawal to a maximum of twenty years, rather than by congressional action, which would be in perpetuity, did not prejudice the public's ability to participate in the decision-making process. *Id.* at 764-65. We noted that "[t]he same public that would comment on a proposed administrative withdrawal would in all likelihood comment on a congressional withdrawal, since the impact of both actions on all concerned persons would be identical for a substantial period of time at least." *Id.* at 765 (footnote omitted). In addition, the hearings provided the public with the opportunity to comment on both administrative and congressional withdrawal. *Id.* Therefore, we held that the procedures used were unaffected by the notice's deficiency. *Id.*

**[7]** The distinction between *Idaho Farm Bureau*, *Riverbend*, *Sagebrush Rebellion* and the situation we consider here is quite clear, and it is this distinction that makes the difference between a procedural violation of the APA that is harmless and one that is not. Whereas in the three aforementioned cases, interested parties received some notice that sufficiently

enabled them to participate in the rulemaking process before the relevant agency adopted the rule, here, petitioners were given no such opportunity. In fact, the petitioners received no notice of any kind until after the Bureau made the 1997 interim rule effective. That petitioners had an opportunity to protest an already-effective rule prior to the time it was applied to each of them does not render the APA violation harmless. *See Chrysler*, 441 U.S. at 313-16; *Riverbend*, 958 F.2d at 1485, 1487. Thus, here, the Bureau's mistake had a bearing on the procedure used, and this mistake was not harmless.

*Buschmann v. Schweiker,* 676 F.2d 352 (9th Cir. 1982), demonstrates the correctness of this conclusion, and moreover, requires us to hold that the Bureau's error was not harmless. In *Buschmann*, we determined that the Secretary of the Department of Health, Education and Welfare failed to conform to the procedures required by section 553(b) and (d) of the APA when proposing an amendment to a regulation concerning the valuation of support and maintenance in household situations that affected certain individuals' eligibility for Social Security Income benefits. *Id.* at 356. The Secretary did not give thirty-day advance notice of or provide an opportunity for the public to comment on the proposed amendment prior to its effective date. *Id.* We concluded that this error was not harmless and held that the interim amendment was invalid. *Id.* at 358. *Buschmann* provides the critical analysis for our inquiry and leads to the inevitable determination that the APA violation was not harmless in this case.

D

**[8]** Given that the Bureau violated the APA, and that the violation was not harmless, we turn to the question of remedy. "Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid." *Idaho Farm Bureau*, 58 F.3d at 1405; *see W.C. v. Bowen*, 807 F.2d 1502, 1505 (9th Cir. 1987), *amended by*, 819 F.2d 237 (9th Cir.

1987); *Buschmann*, 676 F.2d at 355-56; *Western Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980); *see also Grier*, 46 Fed. Appx. at 439 n.2. On occasion, we have determined that equity requires an invalid rule to stay in place while "a strict reconstruction of procedural rights" and "a reenactment of the deliberative process with correct provision for the petitioners' participation" is achieved. *Western Oil*, 633 F.2d at 813.

[9] This is not one of those occasions because such a reconstruction is impossible. *See Idaho Farm Bureau*, 58 F.3d at 1405-06 (holding that equity demands the designation of the Springs Snail as an endangered species be left in place while FWS remedies its procedural error in order to prevent the potential extinction of the Springs Snail); *Western Oil*, 633 F.2d at 813 (leaving in effect the challenged designation — that designated certain geographical areas in California as failing to meet federal air quality standards — during reenactment of the deliberative process "to avoid thwarting in an unnecessary way the operation of the Clean Air Act in the State of California during the time the deliberative process is reenacted"). The district court correctly concluded that the proper remedy was to hold the Bureau's 1997 interim regulation invalid.

[10] The effect of invalidating an agency rule is to reinstate the rule previously in force. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983). Because the rule previously in force, the 1995 regulation, erroneously interpreted 18 U.S.C. § 3621(e)(2)(B), *see Downey*, 100 F.3d at 668, the applicable rule is the final rule that was effectuated on December 22, 2000. The subsequent enactment of the final rule can only have prospective effect. *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 758 (D.C. Cir. 1987), *aff'd on other grounds*, 488 U.S. 204 (1988). Therefore, the 1997 interim regulation is invalid as to those persons disqualified by it prior to the issuance of the final rule.

### III

In sum, the district court was entirely correct in its conclusion. We affirm the judgments of the district court in the consolidated cases granting the habeas corpus petitions.

**AFFIRMED.**

---

BEEZER, Circuit Judge, concurring:

I concur in the opinion of the court. The last time this consolidated appeal was before us, I wrote separately to observe a tension in our case law over the application of the Administrative Procedures Act ("APA") to a Bureau of Prison's Program Statement. *See Grier v. Hood*, 46 Fed. Appx. 433, 440 (9th Cir. 2002) (Beezer, J., concurring). I write separately once again to note that this tension remains unresolved.

### I

This court's invalidation of the Bureau's 1997 interim regulation marks the culmination of a series of challenges to the Bureau's actions that year concerning prisoner eligibility for an early release program. The Bureau detailed the eligibility criteria for this program in two separate documents, issued within a week of each other in 1997. *See Gunderson v. Hood*, 268 F.3d 1149, 1151 (9th Cir. 2001). The documents consisted of an interim regulation and a new Program Statement. Prisoners have been arguing with the Bureau over the validity of these documents, which the government on appeal refers to collectively as the "1997 interim rule," ever since.

The first challenges to the 1997 interim rule were on substantive grounds. Prisoners argued that the Bureau exceeded its discretion in establishing certain early release requirements. We held that the 1997 actions were a proper use of the

Bureau's discretion. *Bowen v. Hood*, 202 F.3d 1211, 1220 (9th Cir. 2000). The Supreme Court agreed. *See Lopez v. Davis*, 531 U.S. 230, 238 (2001).

Prisoners next challenged the procedural validity of the interim rule. The first challenge occurred in *Grassi v. Hood,* 251 F.3d 1218 (9th Cir. 2001). We construed the petitioner in *Grassi* as contesting whether the 1997 interim *regulation* complied with APA procedural requirements. *Id.* at 1221. We declined, however, to decide that issue because the petitioner failed to also challenge the procedural validity of the 1997 *Program Statement*, an "independent document[ ]" that, as relevant here, separately excluded from the early release program the same class of prisoners described in the interim regulation. *Id.* We held that the petitioner was not entitled to relief because the interim regulation's compliance with the APA had "no effect" on the "continuing validity" of the Program Statement. *Id*. at 1221-22.

Given this result, it is perhaps not surprising that the 1997 Program Statement itself next became the subject of an APA challenge. We held in *Gunderson v. Hood*, 268 F.3d 1149, 1155 (9th Cir. 2001), that the 1997 Program Statement need not comply with the APA because it was merely interpreting a substantive regulation (the 1997 interim regulation) that *was* subject to the APA. Far from reading the Program Statement as a separate authority capable of outlining a policy for disqualifying prisoners independent of the interim regulation, we concluded that the Program Statement "did no more than clarify or explain existing law." *Id.* (internal quotation marks and citation omitted). We again denied relief to the prisoner.

## II

These prior cases set the stage for the present lawsuit. The goal of the current petitioners, like that of the petitioners in *Grassi* and *Gunderson*, is to invalidate the application of the

1997 Bureau policy to their prison sentences.[1] The difference, of course, between the previous challenges and this one is that here we hold in favor of the petitioners. But I note that in so holding, we once again avoid addressing the tension between *Grassi* and *Gunderson*. In particular, we do not explain how invalidating the interim *regulation* qualifies these petitioners for relief when, under *Gunderson*, the Program Statement is not itself subject to the APA procedural requirements and, under *Grassi*, remains an adequate basis for excluding prisoners from the early release program, independent of the interim regulation. *See* 46 Fed. Appx. at 441 (Beezer, J., concurring).

There is a simple answer to this question, at least as far as the cases before us are concerned: no one on appeal challenges the district court's conclusion that "the program statement[ ] may not be used to deny petitioner[s] early release." *Bohner v. Daniels*, 243 F. Supp. 2d 1171, 1179 (D. Or. 2003).[2] I remain unconvinced that the language in *Grassi* supports this conclusion, but recognize that any other solution may be even more at odds with either *Grassi* or *Gunderson*. More importantly, by not contesting this point of the district court's holding, the government appears to concede that *Grassi* does

[1]As noted in the opinion of the court, the 1997 policy was not the agency's first attempt to disqualify from the early release program prisoners incarcerated for crimes involving the possession of a firearm. But it was the first regulation held to be a substantively valid basis for excluding this class of prisoners. *See Bowen*, 202 F.3d at 1217 (discussing *Davis v. Crabtree,* 109 F.3d 566 (9th Cir. 1997); *Downey v. Crabtree*, 100 F.3d 662, 670 (9th Cir. 1996)). It is this fact that makes the procedural challenge here so important to the current petitioners.

[2]The court reasoned that for the 1997 Program Statement to be capable of independently barring relief to petitioners as per *Grassi*, the Program Statement must be treated as a "legislative rule," which would require compliance with APA procedures. *See Bohner*, 243 F. Supp. 2d at 1178-79. The Bureau's failure to follow these procedures prevented it from relying on this argument. Alternatively, under *Gunderson*, if it was *not* necessary for the Program Statement to comply with the APA, it must be because the Program Statement is dependent on the validity of the interim regulation that gives it legitimacy. *See id.*

not prevent us from granting relief to the petitioners. I see no reason to take issue with such a concession.