**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BACKCOUNTRY AGAINST DUMPS; DONNA TISDALE; JOE E. TISDALE, | No. 21-71426 |
| *Petitioners*, | |
| v. | OPINION |
| FEDERAL AVIATION ADMINISTRATION; U.S. DEPARTMENT OF TRANSPORTATION, | |
| *Respondents*. | |

On Petition for Review of an Order of the
Federal Aviation Administration

Argued and Submitted January 25, 2023
San Francisco, California

Filed August 15, 2023

Before:  Ronald M. Gould, Johnnie B. Rawlinson, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Gould;
Concurrence by Judge Bress

# SUMMARY[*]

## Federal Aviation Administration

The panel vacated the Federal Aviation Administration's ("FAA") denial of a petition for discretionary review of a plan to construct 72 wind turbines to generate renewable energy in Southern California, and remanded to the agency to consider the merits of the petition.

Pursuant to FAA regulations, Terra-Gen Development Company gave the FAA notice of its planned wind turbine development. The FAA conducted an aeronautical study of the project and issued a "no hazard" determination, finding that the turbines did not pose a hazard to air navigation. Backcountry Against Dumps, a non-profit organization, and two individuals who live near the development, petitioned for review of the "no hazard" determination.

The panel held that the FAA's rejection of Backcountry's petition for discretionary review, for the sole reason that Backcountry did not comment on the aeronautical study of the project, was arbitrary and capricious. The FAA's reasonable interpretation of its own regulations specified that interested parties must receive personal notice of the comment period, and Backcountry fits within the plain meaning of an "interested party." Therefore, the FAA failed to comply with its own regulations by not providing Backcountry with personal notice of the second comment period. In addition,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Backcountry was substantially prejudiced by the FAA's procedural error.

Concurring in the judgment, Judge Bress agreed with the majority opinion that the FAA erred in denying Backcountry's petition for discretionary review of the FAA's "no hazard" determination, but he would reach that result through a narrower path because the majority opinion exceeds what is needed to decide the case.

## COUNSEL

Stephan C. Volker (argued), Alexis E. Krieg, Stephanie L. Clarke, and Jamey M.B. Volker, Law Offices of Stephan C. Volker, Berkeley, California, for Petitioners.

Caroline D. Lopez (argued) and Abby C. Wright, Appellate Staff Attorneys; Noah J. White, Staff Attorney; Sara Mikolop, Acting Assistant Chief Counsel for Regulations; Marc A. Nichols, Chief Counsel; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondents.

Jennifer Trock, Baker & Mckenzie LLP, Washington, D.C., for Amicus Curiae Terra-Gen Development Company LLC.

**OPINION**

GOULD, Circuit Judge:

This case concerns the Federal Aviation Administration's ("FAA") review of a plan to construct 72 wind turbines to generate renewable energy in Southern California.  The case has exceptionally high public importance.  On the one hand, the development of renewable energy, such as wind, is of the utmost importance in our obligation as a Nation to address climate change and its ill effects.  The transition away from fossil fuels as an energy source is vital to meeting national and international benchmarks, which as a world we *must* achieve in order to avoid the worst impacts of climate change.[1]

On the other hand, whatever the benefits of more clean energy from wind turbines harnessing the air rather than fossil fuels, there can be no doubt that the development must proceed in a manner that accounts for the safety of aircrafts

---

[1] "Climate change is a threat to human well-being and planetary health (very high confidence). There is a rapidly closing window of opportunity to secure a liveable and sustainable future for all . . . . The choices and actions implemented in this decade will have impacts now and for thousands of years (high confidence)."  Intergovernmental Panel on Climate Change, *Synthesis Report of the IPCC Sixth Assessment Report (AR6), Summary for Policy Makers* 25 (2023), https://www.ipcc.ch/report/ar6/syr/.  "Rapid and far-reaching transitions across all sectors and systems are necessary to achieve deep and sustained emissions reductions and secure a liveable and sustainable future for all. These system transitions involve a significant upscaling of a wide portfolio of mitigation and adaptation options."  *Id.* at 30.  Wind energy is a "feasible adaptation option[] that support[s] infrastructure resilience, reliable power systems and efficient water use for existing and new energy generation systems (very high confidence)."  *Id.*

flying near the turbines.  Limiting hazards to aircrafts is a very high priority in the national mind because of the potential for loss of life and catastrophic accidents.

Pursuant to FAA regulations, Terra-Gen Development Company ("Terra-Gen"), amicus curiae in this case, gave the FAA notice of its planned wind turbine development, and the FAA requires notice of any structure more than 200 feet tall.  14 C.F.R. § 77.9(a).  Because the wind turbines are over 499 feet tall, the FAA conducted an aeronautical study of the project and issued a "no hazard" determination, finding that the turbines do not pose a hazard to air navigation. Backcountry Against Dumps, a non-profit organization, and Donna and Joe "Ed" Tisdale, who live near the development, (collectively "Backcountry") petitioned the FAA for discretionary review of its "no hazard" determination.

The FAA's regulations provide that members of the public may petition for discretionary review of a "no hazard" determination if they are a sponsor, if they commented on a proposal in aeronautical study, or if they were not given an opportunity to state their comment.  14 C.F.R. § 77.37.  The FAA rejected Backcountry's petition on the sole ground that Backcountry did not comment on the study during the comment period.  Backcountry argues that it was not given an opportunity to comment because the FAA did not provide Backcountry with particularized notice of the comment period, as the FAA's regulations and internal guidance document require.[2]   Backcountry does not challenge the

---

[2] In the alternative, Backcountry argues that its comments on a previous aeronautical study were sufficient to meet the comment requirement of 14 C.F.R. § 77.37.  We do not address this argument because we resolve this case on alternative grounds.

substance of the FAA's "no hazard" determination at this time.

We agree that the FAA erred in not providing Backcountry with notice of the comment period, depriving Backcountry of an opportunity to comment on the proposal. Backcountry was therefore eligible to petition for discretionary review of the no hazard determination under 14 C.F.R. § 77.37 as a party who was not given an opportunity to state its substantial aeronautical comment. The FAA's rejection of Backcountry's petition for discretionary review, for the sole reason that Backcountry did not comment on the aeronautical study, was arbitrary and capricious. We vacate the FAA's decision and remand to the agency with instructions that it consider the merits of Backcountry's petition for discretionary review.

## I. Regulatory Structure

Under FAA regulations, the FAA must be notified of any new structure standing over 200 feet above ground level. 14 C.F.R. § 77.9(a). A new structure that stands more than 499 feet above ground level exceeds air navigation standards and is considered an obstruction to air navigation. 14 C.F.R. § 77.17(a)(1). The FAA conducts aeronautical studies on projects that propose constructing structures that obstruct air navigation, and, based on the aeronautical study, the FAA determines whether the proposed object poses a hazard to air navigation. 14 C.F.R. § 77.15(b); 14 C.F.R. § 77.29(a) ("The FAA conducts an aeronautical study to determine the impact of a proposed structure . . . on aeronautical operations, procedures, and the safety of flight."). The FAA issues "hazard" or "no hazard" determinations based on its findings.

"When the FAA needs additional information" in conducting its aeronautical study "it may circulate a study to interested parties for comment."   14 C.F.R. § 77.25(c). FAA's Order JO 7400.2 Procedures for Handling Airspace Matters ("FAA Order 7400.2" or "FAA Order") provides additional direction to the agency when circulating notice for public comment on aeronautical studies.  FAA Order 7400.2. "Circularizing a public notice allows the FAA to solicit information that may assist in determining what effect, if any, the proposed structure would have to the navigable airspace. The [Obstruction Evaluation Group ("OEG")] determines when it is necessary to distribute a public notice," pursuant to criteria laid out in the FAA Order.  FAA Order 7400.2 6-3-17(a).

Under the FAA Order 7400.2, the FAA "should" distribute public notice of the aeronautical study to "those who can provide information needed to assist in identifying/evaluating the aeronautical effect of the structure."  FAA Order 7400.2 6-3-17(c).  The FAA Order 7400.2 specifies that "[a]s a minimum," certain groups "should be included on distribution lists due to their inherent aeronautical interests," including:

> All known aviation interested persons and groups such as state, city, and local aviation authorities; airport authorities; various military organizations within the DoD; and other organizations or individuals that demonstrate a specific aeronautical interest through subscription to notifications. . . . [and] As appropriate, state and local authorities; civic groups; organizations; and individuals who do not

have an aeronautical interest, but may
become involved in specific aeronautical
cases, *must be* included in the notice
distribution, and given supplemental notice
of actions and proceedings on a case-by-case
basis.

FAA Order 7400.2 6-3-17(c)(2), (6) (emphasis added).

The FAA issues a "Determination of No Hazard to Air
Navigation . . . when the aeronautical study concludes that
the proposed construction or alteration will exceed an
obstruction standard but would not have a substantial
aeronautical impact to air navigation." 14 C.F.R. § 77.31(d).
"The FAA will make determinations based on the
aeronautical study findings" and other factors. 14 C.F.R.
§ 77.31(b). The FAA "will advise all known interested
persons" of its "no hazard" determination. 14 C.F.R.
§ 77.31(a).

A party may petition the FAA for discretionary review
of a "no hazard" determination if the party is "the sponsor,
provided a substantive aeronautical comment on a proposal
in an aeronautical study, or ha[s] a substantive aeronautical
comment on the proposal but w[as] not given an opportunity
to state it." 14 C.F.R. § 77.37(a). The petition "must include
new information or facts not previously considered or
presented during the aeronautical study, including valid
aeronautical reasons why the determination . . . made by the
FAA should be reviewed." 14 C.F.R. § 77.39(b). The FAA
regulations specify that the review is "discretionary," but, if
review is granted, "the FAA will inform the petitioner and
the sponsor (if other than the petitioner) of the issues to be
studied and reviewed. The review may include a request for

comments and a review of all records from the initial aeronautical study." 14 C.F.R. § 77.41(a).

Courts have recognized that an FAA hazard/no hazard determination alone does not have the authority to authorize proceeding, that is to give a "green light" to proceeding with the project. Nor does it authorize or compel the stopping of development of a project. But other permits and practical hurdles for the construction of the project may hinge on the hazard/no hazard determination. *See Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 966–67 (D.C. Cir. 1979) ("Once issued, a hazard/no-hazard determination has no enforceable legal effect. The FAA is not empowered to prohibit or limit proposed construction it deems dangerous to air navigation. Nevertheless, the [hazard/no hazard] ruling has substantial practical impact." (footnote omitted).

## II. Procedural History

On October 21, 2019, the FAA circulated notice of its aeronautical study of Terra-Gen's proposed turbines for public comment. The FAA posted the notice on its website and circulated notice to some parties. The FAA did not circulate notice to Backcountry specifically. Backcountry commented on the project during the first comment period in January 2020. On July 16, 2020, the FAA issued "no hazard" determinations for 72 turbines in the proposed project. On August 17, 2020, Backcountry filed a timely petition for discretionary review of the "no hazard" determinations with the FAA. In the August 2020 petition, Backcountry argued that (1) the project is located in an area that is used by aircrafts, but the determinations did not analyze the impact on visual flight rules ("VFR"), (2) the project would have an adverse impact on low flying aircrafts,

especially those used for agriculture and firefighting; (3) four of the turbines would degrade nearby radar function; (4) the proposed lighting was insufficient; and (5) the FAA did not consider potential turbulence caused by the turbines.

The FAA granted the petition for discretionary review as to some issues raised in the petition, finding that there were "errors in the aeronautical study process." First, the OEG stated that there was "no data available" to indicate that the wind turbines would impact VFR operations, but on review the FAA noted that "[t]here is no data in the case file to support any type of query into VFR flight with the air traffic facility, through radar analysis, or with outside entities. Absent any type of documentation to support this finding, we dispute any claim that there is no data available within or outside of the FAA concerning VFR flight." Second, the FAA noted that the public notice was not properly distributed to "many of the entities listed" in the in FAA Order 7400.2, paragraph 6-3-17(c), including "flying clubs, flight schools, or local aviation organizations."

The FAA directed OEG to: Rescind the "no hazard" determinations; "Initiate a new public notice with dissemination to all entities listed in FAAO 7400.2, paragraph 6-3-17(c);" "Restudy the proposal with any new comments;" "Contact the local air traffic facilities for feedback concerning VFR flyways and operations in the vicinity of the proposed wind farm;" and "Ensure that all coordination and analyses are uploaded into the aeronautical study files."

The FAA opened a second public comment period on April 7, 2021. The FAA posted the notice of the second comment period on its website and sent notification to various parties, along with "postcard mailers and email

notifications to those with registered FAA accounts." The FAA did not receive any comments. Backcountry did not create a registered FAA account and it did not receive the FAA's email notification of the second comment period, and it did not otherwise receive notice of the comment period. Backcountry explained that it only learned about the second comment period after it had ended. The FAA does not dispute this.

On August 31, 2021, the FAA reissued the "no hazard" determinations for the 72 wind turbines. Backcountry filed a timely petition for discretionary review on September 30, 2021. *See* 14 C.F.R. § 77.39(a) (petition must be filed within 30 days of No Hazard Determination). In the petition, Backcountry argued that the project would "have a significant adverse effect on aircraft safety and operation, by forcing aircraft to higher elevations where they will suffer greater risks of wing- and rotor-blade icing, by producing turbulence, by degrading radar function, and by impeding low flying aircraft, among other hazards." The petition also argues that the project poses a risk of "fatal aircraft collisions" with wind turbines "that cannot be eliminated by FAA-required lighting."

The FAA rejected the petition as invalid under 14 C.F.R. § 77.37(a) because Backcountry did not comment during the second public comment period. Backcountry now petitions this court for review of the FAA's rejection of Backcountry's petition for discretionary review on the grounds that Backcountry was not given an opportunity to comment because it was not given required notice of the revised aeronautical study.

## III. Jurisdiction

We have jurisdiction to review a final order issued by the FAA Administrator.   49 U.S.C. § 46110(a). *See City of Rochester v. Bond*, 603 F.2d 927, 934–35 (D.C. Cir. 1979).

## IV. Standards of Review

We review the FAA decision under the Administrative Procedure Act ("APA"), which directs us to hold unlawful and set aside agency actions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D); *Pub. Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 196 (D.C. Cir. 1993) (holding that the APA applies to review of FAA orders).   "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'   '[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 52 (1983) (internal quotations omitted)).

Further, "[f]indings of fact by the . . . Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive."  49 U.S.C. § 46110(c); *Aircraft Owners & Pilots Ass'n*, 600 F.2d at 972 (applying the substantial evidence standard to findings by the FAA in its no hazard determination, where the agency considered arguments from both sides).

## V. Discussion

Backcountry argues that the FAA erred by dismissing its 2021 petition for discretionary review for failure to comment because Backcountry was not given an opportunity to state its "substantive aeronautical comment on the proposal" because Backcountry did not receive notice of the second comment period. *See* 14 C.F.R. § 77.37(a). We agree.

### A. Duty to notify

A federal agency, like the FAA, is "obliged to abide by the regulations it promulgates," including its own internal operating procedures. *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998); *Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). This is especially true "[w]here a prescribed procedure is intended to protect the interests of a party before the agency." *Sameena Inc.*, 147 F.3d at 1153 (quoting *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959) (Frankfurter, J., concurring)); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Stated another way, it is absolutely essential that responsible federal agencies must follow their own binding procedures. *Cf. United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000) (holding that an agency was not bound by a general policy statements in an agency's manual); *Farrell v. Dep't Of Interior*, 314 F.3d 584, 590 (Fed. Cir. 2002) ("[A]n agency statement . . . binds the agency only if the agency intended the statement to be binding."). The

powers that federal regulatory agencies have to act within their regulatory spheres of responsibility are necessarily constrained and corralled by the agency's own procedures.

We apply traditional rules of statutory interpretation to regulations, starting with the plain language of the regulation. *Mountain Communities for Fire Safety v. Elliot*, 25 F.4th 667, 676 (9th Cir. 2022); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–16 (2019) (stating that we "must exhaust all the 'traditional tools' of construction" in interpreting a regulation). If a regulation is genuinely ambiguous, then we defer to the agency's *reasonable* interpretation of its own regulation. *Kisor*, 139 S. Ct. at 2414; *Auer v. Robbins*, 519 U.S. 452, 461 (1997). However, we only defer to interpretations that are "the agency's 'authoritative' or 'official position,' rather than any more ad hoc statement not reflecting the agency's views." *Kisor*, 139 S. Ct. at 2416. We may look to guidance documents when applying *Auer* deference. *See Mountain Communities for Fire Safety*, 25 F.4th at 676.[3]

Here, the FAA is not required to provide public notice and solicit comments on all aeronautical studies that it conducts. However the regulations state that "[w]hen the FAA needs additional information, it may circulate a[n aeronautical] study to interested parties for comment." 14 C.F.R. § 77.25(c). The term "circulate" is ambiguous—it could mean the agency should generally make the study

---

[3] The concurrence argues that *Auer* should not apply here. However, because the relevant portion of the FAA Order interprets the FAA regulation, the FAA Order implicates the agency's "substantive expertise," and the FAA Order reflects the agency's "fair and considered judgment," this is exactly the type of case that would call for the application of *Auer* deference. *Kisor*, 139 S. Ct. at 2417.

available to interested parties or alternatively that the agency must place the study in the hands of interested parties. Because the term circulate is ambiguous, we look to the FAA's interpretation of its own regulatory term in the FAA Order.[4] *See* FAA Order 7400.2 6-3-17.

The FAA Order directs the agency to personally send notice of the comment period to the interested parties in most cases. FAA Order 7400.2 6-3-17(d) (requiring the OEG to "[d]ocument and place in the obstruction evaluation file the names of each person and/or organizations to which public notice was sent"). This is a reasonable interpretation of the term circulate. Thus, the FAA must personally notify "interested parties" of the comment period if it determines that it will solicit comments. Circulation of the study via public notice on the FAA's website, without any individualized communication with Backcountry, was not sufficient to satisfy the FAA's regulatory obligation. *See* FAA Order 7400.2 6-3-17(c) (stating that the OEG "should" *distribute* public notices to groups with "inherent aeronautical interests" such as other governmental agencies and nearby airports); *id.* (c)(6) (stating that "individuals who do not have an aeronautical interest, but may become involved in specific aeronautical cases, must be included in the notice *distribution*" (emphasis added)); *Distribute*,

---

[4] Backcountry argues that the FAA Order has the binding effect of law because, although it was not published in the Federal Register, it was subject to a 30-day notice and comment period before publication. *See* FAA Order 7400.2 1-1-8. The FAA argues that we need not reach this question because the FAA "substantially complied with any applicable procedure." We reject the FAA's contention that it complied with the applicable procedure, but we need not address the issue of whether the FAA Order has the binding effect of law because the Order is the FAA's reasonable interpretation of its ambiguous regulation.

Miriam-Webster,                    https://www.merriam-webster.com/dictionary/distribute (defining distribute as "to give out or deliver especially to members of a group").

The next question is who qualifies as an "interested party" to whom the FAA must send personal notice of the comment period on the aeronautical study.  The regulations make it clear that the FAA may not choose to circulate the study and solicit comment from only some interested parties.  While the outer bounds of the term "interested parties" is not clear from the statute, in this case Backcountry is squarely and unambiguously an interested party because it previously petitioned the FAA for discretionary review in this case.**[5]**

The FAA argues that "interested parties" is a term of art defined in the FAA Order.  However, even if "interested parties" were ambiguous in this context, the FAA Order supports our interpretation that Backcountry is clearly an interested party.  The order defines interested parties as, in relevant part "state and local authorities; civic groups; organizations; and individuals who do not have an aeronautical interest, but may become involved in specific aeronautical cases."  FAA Order 7400.2 6-3-17(c)(6).  The order goes on to require that these parties "*must* be included in the notice distribution."  *Id.* (emphasis added). The full text of the pertinent section of the FAA Order is set forth

---

[5] In fact, the FAA recognized its own mistake in failing to circulate notice to all interested parties during its first discretionary review.  The FAA directed the OEG to "[i]nitiate a new public notice with dissemination to all entities listed in FAAO 7400.2, paragraph 6-3-17 3 (c)."

below.[6]  Backcountry is such an organization, and under the FAA Order it must be provided notice.

The FAA Order also specifies that "as a minimum" certain groups "should be included on distribution lists due to their inherent aeronautical interests."  FAA Order 7400.2

---

[6] FAA Order 7400.2 6-3-17(c) says: "Public notices should be distributed to those who can provide information needed to assist in identifying/evaluating the aeronautical effect of the structure. As a minimum, the following governmental agencies, organizations, and individuals should be included on distribution lists due to their inherent aeronautical interests: (1) The sponsor and/or his representative. (2) All known aviation interested persons and groups such as state, city, and local aviation authorities; airport authorities; various military organizations within the DoD; and other organizations or individuals that demonstrate a specific aeronautical interest through subscription to notifications. More information about subscribing to notifications regarding structures that may impact a specific airport or airspace area is available at https://oeaaa.faa.gov. (3) Airport owners as follows: (a) All public-use airports within 13 NM of the structure. (b) All private-use airports within 5 NM of the structure. (4) The specific FAA approach facility, en route facility (ARTCC), and Flight Service Station (FSS) in whose airspace the structure is located. (5) An adjacent regional/service area office if the structure is within 13 NM of the regional state boundary. (6) As appropriate, state and local authorities; civic groups; organizations; and individuals who do not have an aeronautical interest, but may become involved in specific aeronautical cases, must be included in the notice distribution, and given supplemental notice of actions and proceedings on a case-by-case basis. Those involved should clearly understand that the public notice is to solicit aeronautical comments concerning the physical effect of the structure on the safe and efficient use of airspace by aircraft. (7) A proposed structure that penetrates the 40:1 by 35 feet or more, departure slope must be circularized to the following: (a)Aircraft Owners and Pilots Association; (b) National Business Aviation Association; (c) Regional Air Line Association; (d) Department of Defense; (e) Air Transport Association; (f) Air Line Pilots Association; and (g) Other appropriate persons and organizations listed in this section."

6-3-17(c).  The FAA Order itself shows that "must" is used intentionally.  The FAA Order explicitly states that "'[s]hould' is used when application is recommended," while "'[m]ust' means an action/procedure is mandatory." FAA Order 7400.2 1-2-5.

Thus, because the FAA's reasonable interpretation of its own regulations clearly specified that interested parties must receive personal notice of a comment period beyond a mere public website posting, and because Backcountry unambiguously fits within the plain meaning of an "interested party," we hold that the FAA erred by not providing Backcountry with personal notice of the comment period.

## B. Prejudice

The FAA further contends that even if the FAA erred by not giving Backcountry notice, Backcountry did not show that it was prejudiced by the procedural deficiencies.  The FAA "'is entitled to a measure of discretion in administering its own procedural rules' where the rules do not confer important procedural benefits upon individuals and the complaining party has not shown 'substantial prejudice.'" *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1115 n.3 (9th Cir. 2009) (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970)); *see also Steamboaters v. FERC*, 759 F.2d 1382, 1390–91 (9th Cir.1985).  The Supreme Court has drawn an important distinction in such cases between procedural rules that "confer important procedural benefits upon individuals" and procedural "rules adopted for the orderly transaction of business before" the agency.  *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. at 539; *see also Montes-Lopez v. Holder*, 694 F.3d 1085, 1093 (9th Cir. 2012).

The prejudice analysis depends on the "types of action and error at issue." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220 (9th Cir. 2004). We have long recognized the importance of procedural rules that allow interested parties to comment on and engage with administrative processes. *See, e.g., California Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011) (holding that the Department of Energy's ("DOE") "failure to consult [states prior to publishing a report] was not some technical error, but resulted in a decisionmaking process that was contrary to that mandated by Congress and one that deprived DOE of timely substantive information." Thus, the procedural error was not harmless and substantially prejudiced the plaintiffs); *Paulsen v. Daniels*, 413 F.3d 999, 1007 (9th Cir. 2005) (holding that a procedural error of failing to solicit comments before administrative rulemaking prejudiced the plaintiffs, and was not a harmless error, because the procedural error precluded the plaintiffs from participating in the administrative process until after the rule was promulgated); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220 (9th Cir. 2004) ("In the rulemaking context, we exercise great caution in applying the harmless error rule, holding that failure to provide notice and comment is harmless only where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." (internal citation and quotation omitted)); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1482 (9th Cir. 1992) ("Procedure, not substance, is what most distinguishes our government from others."). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("A procedural right must generally be understood as "substantial" in the context of this statement when the regulation is intended to confer a procedural protection on

the party invoking it."). In cases where an agency committed a procedural error that precluded an interested party from engaging with an administrative action, we have held that the determination of prejudice "must focus on the process as well as the result" to give meaning to statutory and regulatory procedural requirements. *California Wilderness Coal.*, 631 F.3d at 1090 (quoting *Riverbend Farms, Inc.*, 958 F.2d at 1487 (internal citation and quotation omitted)); *Paulsen*, 413 F.3d at 1007. A statutory "notice requirement reflects the desirability of the interactive process itself." *California Wilderness Coal.*, 631 F.3d at 1092. The purpose of notice and public comment procedures in those cases, as here, "was directed at process and not merely a final result." *Id.*

Under this regulatory scheme at issue in this case, the FAA is not required to change the outcome of its "no hazard" determination based on the comments it receives. The purpose of the regulatory comment period is the "interactive process itself" and not the "final result." *Id.* The procedural error completely deprived Backcountry of the opportunity to comment on the second "no hazard" determination. Thus, the FAA's procedural error substantially prejudiced Backcountry by depriving it of the opportunity to engage in this interactive administrative process.

## C. Substantial aeronautical comment

A party may petition the FAA for discretionary review of a determination if, in relevant part, the party has "a *substantive aeronautical comment* on the proposal but [was] not given an opportunity to state it." 14 C.F.R. § 77.37(a) (emphasis added). The petition "must include new information or facts *not previously considered* or presented during the aeronautical study." 14 C.F.R. § 77.39(b).

In this appeal, the FAA contends that all issues Backcountry raised in connection with the 2021 petition were previously raised before the FAA in its prior petition, so that even if Backcountry was not given the opportunity to comment, it did not meet the requirements of 14 C.F.R. § 77.37 because it does not have a substantial aeronautical comment. However, the FAA did not reject Backcountry's petition for review on this basis and the record is not sufficiently developed for us to determine this issue in the first instance. Therefore, we remand this case for the FAA to determine whether Backcountry provided a substantial aeronautical comment pursuant to 14 C.F.R. § 77.37.

## VI. Conclusion

We hold that the FAA failed to comply with its own regulation by not providing notice of the second comment period to Backcountry. Because of this procedural error, Backcountry was not given an opportunity to state its "substantive aeronautical comment on the proposal." 14 C.F.R. § 77.37(a). We vacate the FAA's denial of discretionary review and remand to the FAA to consider Backcountry's petition for discretionary review.

**VACATED AND REMANDED.**

BRESS, Circuit Judge, concurring in the judgment:

I agree with the majority opinion that the Federal Aviation Administration (FAA) erred in denying Backcountry's petition for discretionary review of the FAA's "No Hazard" determination for a wind farm project near Campo, California.  But I reach this result through a narrower and straighter path.

I

When a person plans to "construct[] or alter[] a structure [that] may result in an obstruction of the navigable airspace, . . . the Secretary of Transportation shall conduct an aeronautical study to decide the extent of any adverse impact on the safe and efficient use of the airspace, facilities, or equipment."  49 U.S.C. § 44718(b)(1).  "On completing the study, the Secretary of Transportation shall issue a report" regarding the risks that the planned construction may pose to the "use of the navigable airspace."  *Id.* § 44718(b)(2)(A).

The FAA carries out these aeronautical studies and risk assessments on behalf of the Secretary.  *See Paskar v. U.S. Dep't of Transp.*, 714 F.3d 90, 92 (2d Cir. 2013).  For aeronautical studies, if the FAA "needs additional information, it may circulate a study to interested parties for comment."  14 C.F.R. § 77.25(c).  For risk determinations, the FAA "will issue a determination stating whether the proposed construction . . . would be a hazard to air navigation, and will advise all known interested persons."  *Id.* § 77.31(a).  If the FAA concludes that the proposed structure will not have a "substantial aeronautical impact" on air navigation, the FAA will issue what is called a "Determination of No Hazard."  *Id.* § 77.31(d); *see also Paskar*, 714 F.3d at 92; *City of Rochester v. Bond*, 603 F.2d

927, 930 (D.C. Cir. 1979).

The FAA's regulations provide that three categories of persons are eligible to petition the FAA for discretionary administrative review of a "No Hazard" determination.  The three categories of eligible petitioners are: (1) the sponsor of the project; (2) those who "provided a substantive aeronautical comment on a proposal in an aeronautical study"; or (3) those who "have a substantive aeronautical comment on the proposal but were not given an opportunity to state it."  14 C.F.R. § 77.37(a).

In this case, the FAA denied Backcountry's petition for review solely on the ground that the FAA had published notice of its aeronautical study and Backcountry had not commented on it.  Backcountry did not fit into the first two categories of eligible petitioners under 14 C.F.R. § 77.37(a) because it was not the project sponsor and did not comment on the operative aeronautical study.  But Backcountry maintains that it fits within the third category of eligible petitioners because it had a substantive aeronautical comment and was not given the opportunity to state it.  The reason it lacked this opportunity, Backcountry claims, is that FAA failed to provide it with required notice of the aeronautical study.

Backcountry is right that it lacked an opportunity to comment on the study.  An FAA implementing order, Order JO 7400.2 Procedures for Handling Airspace Matters, provides that "[p]ublic notices should be distributed to those who can provide information needed to assist in evaluating the aeronautical effect of the structure."  *Id.* § 6-13-17(c). The Order goes on to state that "[a]s appropriate," persons "who do not have an aeronautical interest, but may become involved in specific aeronautical cases, *must* be included in

the notice distribution." *Id.* § 6-3-17(c)(7) (emphasis added).

Backcountry was one of these persons entitled to notice: it became "involved" in this specific aeronautical case by commenting on the first aeronautical study for this project and successfully petitioning for review of the FAA's first "No Hazard" determination in 2020. The FAA does not contend that its compliance with FAA Order 7400.2 § 6-3-17(c) is merely optional. Indeed, the FAA previously recalled its first "No Hazard" determination for this same project precisely because Backcountry pointed out that FAA's notice distribution of the first aeronautical study failed to comply with FAA Order 7400.2 § 6-3-17(c). The FAA has not explained why it was "appropriate" to leave Backcountry off the distribution list for the second aeronautical study at issue here, especially when it was Backcountry's efforts that led to the FAA needing to pursue a second study for this project.

The FAA now contends that it posted the second aeronautical study on its public website, and that this was sufficient notice. This was not a stated basis for the FAA decision on review. But regardless, this website posting is not in the record, nor is there evidence that the FAA told Backcountry how to arrange to receive notice via the website. On the limited record before us, there is also no evidence that Backcountry viewed the study on the FAA website or that Backcountry otherwise knew about it in time to provide a substantive comment. Under these circumstances, because Backcountry was entitled to receive notice of the second aeronautical study under FAA Order 7400.2 § 6-3-17(c)(7) and did not receive it, Backcountry was "not given an opportunity to state" its comments on the study. 14 C.F.R. § 77.37(a). In denying Backcountry's

petition on the sole ground that Backcountry failed to comment on the second aeronautical study, the FAA committed legal error.

The FAA maintains that its non-compliance with its notice obligations did not prejudice Backcountry and therefore does not constitute grounds for granting Backcountry any relief.  It is true that "relaxation of a procedural rule by an agency in a particular case is not subject to judicial interference in the absence of a showing of injury or substantial prejudice." *City of Fremont v. FERC*, 336 F.3d 910, 917 (9th Cir. 2003); *see also Steamboaters v. FERC*, 759 F.2d 1382, 1391 (9th Cir. 1985); *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970).  On this record, however, I cannot conclude there was a lack of prejudice.  *See Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1093 (9th Cir. 2011) (granting petition for review because "we are left with substantial doubt as to whether [the agency] would have made the same findings had it consulted with the affected" parties).

Other than its factually unsupported website notice theory, the FAA argues that Backcountry suffered no prejudice because the FAA has already considered Backcountry's same basic arguments in connection with the first "No Hazard" finding.  Effectively, FAA is arguing that even if Backcountry lacked a prior opportunity to comment on the second study, Backcountry's petition could have been denied under 14 C.F.R. § 77.39(b) because Backcountry did not raise sufficiently "new information or facts not previously considered or presented during the aeronautical study."  The FAA also maintains that Backcountry's petition for discretionary review was based on "fundamentally flawed interpretations" of the scope of FAA's second study.

The agency's arguments are not enough.  The FAA is asking us to delve into the merits and substance of Backcountry's operative petition, which is something the FAA did not itself do in the discretionary review process. Even if we could reach the FAA's desired result in the name of a prejudice analysis without running afoul of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the record in this case does not provide a sound basis for doing so.  The matters here are technical and complex, involving aviation safety.  I am unwilling to discredit Backcountry's substantive arguments in the absence of any such determination by the FAA, whose expertise is supposed to be brought to bear here. That is especially so when the FAA's decision on Backcountry's petition for discretionary review consists of a non-descript two-line order finding that Backcountry had not previously commented on the study.  The agency cannot be heard to complain when we are not well-positioned to do the heavier lifting that it failed to do on its own.

Backcountry's petition for review must thus be granted. The FAA may well be able to deny Backcountry's discretionary petition on other grounds.  It just cannot do so on the ground that the FAA was not required to inform Backcountry about the second aeronautical study.

## II

The majority opinion reaches the same result, but in three areas, the majority's reasoning exceeds what is needed to resolve this case.

*First*, in concluding that the FAA was required to give Backcountry notice of the second aeronautical study, the majority unnecessarily affords the agency *Auer* deference. *See Auer v. Robbins*, 519 U.S. 452 (1997).  The majority concludes that FAA regulations are ambiguous on the

question of who must receive notice of an aeronautical study and the means of providing that notice, and it then defers to FAA Order 7400.2 under *Auer*. This exercise is unnecessary because the FAA has not disputed that it is required to comply with Order 7400.2. The majority's application of *Auer* strikes me as rather casual considering the more recent guidance we have received from the Supreme Court on this limited form of agency deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). But in any event, resort to *Auer* is unnecessary here.

*Second*, the majority opinion appears to hold that Backcountry demonstrated prejudice merely because it was deprived of the opportunity to comment on the second aeronautical study. It is unnecessary to go so far here. We have repeatedly found violations affecting the right to public comment to fall short of prejudicial error. *See, e.g.*, *Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977, 993 (9th Cir. 2015); *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 993 (9th Cir. 2012) (per curiam); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 442 (9th Cir. 1993); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1488 (9th Cir. 1992); *Warm Springs Dam Task Force v. Gribble*, 621 F.2d 1017, 1023 (9th Cir. 1980) (per curiam). Thus, the denial of a petitioner's right to public comment may be prejudicial, but is not invariably so, as the majority appears to suggest.

We can see this in *California Wilderness Coalition*, 631 F.3d at 1093, on which the majority relies. There, we concluded that the Department of Energy's failure to consult with affected States was prejudicial because the States "indicated what evidence and information they would have provided if given the opportunity[] and have shown how

their interests were harmed by their exclusion." *Id.* at 1093. We further observed that "petitioners' objections are not frivolous, may well have some merit, and thus, we cannot conclude that [the agency], were it to exercise its discretion when informed by consultation with the affected States, would not modify its decisions." *Id.* at 1095. Our prejudice assessment was record-based and did not turn on the mere fact that the States had not been consulted in the administrative process.

The problem with the FAA's prejudice argument is thus not one of theory, but of the current state of the record. The agency never made a finding that Backcountry is merely re-raising arguments that the FAA has previously rejected, or that Backcountry's petition for discretionary review is substantively flawed. Although the FAA now makes those arguments, I cannot draw the FAA's desired conclusions from the current record. Under our precedents, because "we are left with substantial doubt," *Cal. Wilderness Coal.*, 631 F.3d at 1093, about whether the FAA's decision would have been the same if not for its failure to provide notice of the second aeronautical study, we can and should hold that Backcountry has carried its burden of demonstrating prejudicial error. The record provides sufficient grounds for finding prejudice here. It is not necessary to go further.

*Third*, and finally, I would be remiss if I did not comment on the majority's opening statements about "our obligation as a Nation to address climate change and its ill effects," and the majority's further instruction about "meeting national and international benchmarks," which the majority tells us "as a world we *must* achieve." Today's decision rules in favor of a petitioner that wishes to *prevent* the development of a source of wind-generated power, notwithstanding the majority's imperative that renewable energy be pursued.

This result only underscores that the majority's comments about climate change have no legal relevance to the technical procedural arcana that we deal with in this case.  And as statements of pure policy, these comments can only contribute to the common confusion about the proper and limited role of the courts.  Sincere though the majority's views on environmental policy may be, they command no authority.

For all of these reasons, I can concur only in the judgment.