**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 25 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRENDA HAGEMAN; RICHARD PRICE; TIMOTHY SAGE; LISA PAGE; LOUELLA WILSON; DAVID KOSTKA; MARK SCHOFIELD, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA, INC., <br><br> Defendant - Appellant. | No. 24-7823 <br><br> D.C. No. 8:23-cv-01045-HDV-KES <br><br> MEMORANDUM[*] |
| DANA JAYE BAL; DONALD MICHAEL WILLIAMS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA, INC., <br><br> Defendant - Appellant. | No. 25-656 <br><br> D.C. No. 8:24-cv-01657-HDV-KES |

Appeal from the United States District Court
for the Central District of California
Hernan Diego Vera, District Judge, Presiding

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted December 10, 2025
Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.
Dissent by Judge FORREST.

These consolidated appeals concern class actions related to defective tow-hitch wiring harnesses in 2020–2022 model-year Hyundai Palisade vehicles. Defendant-Appellant Hyundai Motor America, Inc. (Hyundai) appeals the district court's denial of its motions to compel arbitration in both cases. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1). "We review de novo a district court's order denying a motion to compel arbitration." *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025). Because the parties are familiar with the facts of this case, we do not recount them here except as necessary to provide context for our ruling. For the reasons that follow, we affirm and remand for further proceedings consistent with this disposition.

In both class actions, Hyundai moved to compel arbitration pursuant to the terms and conditions covering Hyundai's "Bluelink" services—features that allow consumers to control various aspects of their Hyundai vehicles through their personal cellular devices (Connected Services). Hyundai's provision of the Connected Services is governed by the Connected Services Agreement (CSA), which contains the relevant terms and conditions. Plaintiffs accepted the terms and conditions through a so-called "clickwrap" agreement that required Plaintiffs to

check a box agreeing to the terms before Plaintiffs could access their vehicles'

Connected Services features. *See Godun*, 135 F.4th at 709 n.3.

At issue here is the CSA's arbitration agreement, which provides in pertinent

part:

> Hyundai and you agree to arbitrate any and all disputes and claims between us arising out of or relating to this Agreement, Connected Services, Connected Services Systems, Service Plans, your Vehicle, use of the sites, or products, services, or programs you purchase, enroll in or seek product/service support for, whether you are a Visitor or Customer, via the sites or through mobile application, except any disputes or claims which under governing law are not subject to arbitration, to the maximum extent permitted by applicable law. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us subject to arbitration to the fullest extent permitted by law.

The agreement "includes, but is not limited to[] claims based in contract, tort,

warranty, statute, fraud, misrepresentation or any other legal theory" with the

exception of claims relating to "intellectual property rights." And it imposes a one-

year statute of limitations on all covered claims. Hyundai argues that Plaintiffs

agreed to arbitrate "any and all disputes" relating to their "Vehicle[s]" because

Plaintiffs assented to the terms and conditions of the CSA. We disagree.

1. As a threshold matter, the district court correctly held that the arbitration

agreement's delegation clause is not clear and unmistakable because it expressly

reserves class issues to courts. "The Federal Arbitration Act (FAA) requires courts

to compel arbitration of claims covered by an enforceable arbitration agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509–10 (9th Cir. 2023); *accord* 9 U.S.C. § 3. Under the FAA, the court's role is limited "to 'determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Oberstein*, 60 F.4th at 510 (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). "In determining whether the parties have agreed to arbitrate a particular dispute," we "apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). The parties do not dispute that California law controls here.

The "question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). But "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Henry Schein*, 586 U.S. at 69.

Here, the arbitration agreement purports to delegate threshold questions of arbitrability to the arbitrator: "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions . . . ." The immediate next sentence, however, provides

that "if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall decide whether this agreement permits class proceedings." The phrase "whether this agreement permits class proceedings" in the delegation clause is sufficiently ambiguous that it cannot be clear and unmistakable. At the very least, the class-proceedings carveout is unclear as to whether, if a court decides that class proceedings are permitted, they must be arbitrated or the putative class litigation may proceed in court. These considerations are particularly relevant here because Plaintiffs seek to proceed as a class. *Cf. Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (enforcing arbitration clause where delegation provisions were unambiguous). We agree with the district court that the agreement does not clearly and unmistakably delegate threshold arbitrability questions to the arbitrator where the case is a putative class action.

2. On the merits, the district court did not err in concluding that the parties' dispute is not encompassed by the arbitration agreement "as a straightforward matter of contract interpretation." Hyundai argues that because the agreement requires arbitration of all disputes related to "your Vehicle," Plaintiffs' warranty claims relating to their automobiles' defective tow hitches are covered. We disagree. Though "Vehicle" is a defined term, it is used inconsistently throughout the CSA. A reasonable consumer reading the plain language of the CSA—a "relatively minor

Bluelink contract"—would not likely have been on notice of the apparently broad scope of the arbitration agreement contained therein.

For one, the CSA is the "Connected Services Agreement." The first paragraph states "[w]elcome to Hyundai Blue Link for your Hyundai vehicle," making clear that the CSA concerns Hyundai's "provision of Connected Services." The term "Vehicle" is defined to mean the "Hyundai . . . vehicle" that "come[s] with an authorized Hyundai Blue Link . . . telematics system . . . , which is the equipment, including hardware and software, used to provide Connected Services to [the] Vehicle." Even in its definition, the term "Vehicle" is described in proximity to, and not in any way separately from, the Connected Services. The same paragraph provides that one "must have an active Connected Services subscription to receive the Connected Services." Given that the CSA applies only to the Hyundai vehicles that offer Connected Services—and to the subscribed users of those Connected Services—we are not persuaded that "Vehicle" takes on as broad a meaning in the arbitration agreement as Hyundai advocates. This is especially so given that the warranty claim at the center of these class actions is entirely irrelevant to the Connected Services.

Other key provisions, including those that cover service requirements, payments, and service duration and cancellation, confirm that the purpose of the CSA is to set forth consumers' rights and obligations related to the provision of

Connected Services, not to the entire automobile. And where the CSA makes a distinction between consumers' rights with respect to the entire automobile and Hyundai's provision of the Connected Services, that distinction is stated clearly—for example, in the warranty provision which specifies that the "vehicle's limited warranty does not cover the Connected Services."

The district court did not err in finding the arbitration clause inapplicable to the parties' dispute by applying the absurd results canon. The absurdity canon requires courts to apply the plain language of the text unless doing so would lead to an absurd result. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717–19 (9th Cir. 2020). The same principle is crystallized in California law: "[t]he language of a contract is to govern its interpretation, *if the language is clear and explicit, and does not involve an absurdity*." Cal. Civ. Code § 1638 (emphasis added). Here, even if "Vehicle" may ordinarily mean the entire automobile, we cannot "rely on the written terms alone" to "determine the mutual intention of the parties" because "absurd results follow from [Hyundai]'s preferred interpretation." *Revitch*, 977 F.3d at 717 (citation modified). Under Hyundai's reading, Bluelink subscribers agreed to arbitrate any dispute related to their Hyundai automobile,[1] even if the dispute has nothing to do with Connected Services. Hyundai's position is untenable. *See id.* (concluding that

---

[1] The arbitration agreement excepts only claims either party "may have relating to copyrights or other intellectual property."

DIRECTV's reading of the relevant arbitration agreement led to absurd results where consumer-plaintiff "would be forced to arbitrate any dispute with any corporate entity that happens to be acquired by AT&T, Inc.," as DIRECTV had been, "even if neither the entity nor the dispute has anything to do with providing wireless services to [plaintiff]"); *see also Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) (concluding that "no reasonable person would think that checking a box accepting the 'terms and conditions' necessary to obtain cell phone service would obligate them to arbitrate literally every possible dispute he or she might have with the service provider").

Courts apply the canon against absurdity "to discern the mutual intent of the parties based on their reasonable expectations at the time of contract." *Revitch*, 977 F.3d at 719. In doing so, courts consider the "circumstances under which [the contract] was made, and the matter to which it relates." *Id.* at 717–18. It is unlikely that Plaintiffs' reasonable expectation when subscribing to Bluelink Connected Services on a free and courtesy trial basis was that any and all claims related to their automobiles—including product defect claims—would be forced into arbitration. *See Wexler*, 211 F. Supp. 3d at 504 (concluding that "a reasonable person would be

expressing, at most, an intent to agree to arbitrate disputes connected in some way to the service agreement with [AT&T]").[2]

We therefore affirm the district court's determination that the arbitration agreement does not cover Plaintiffs' warranty claims related to their automobiles' defective tow hitches, and we remand for further proceedings consistent with this disposition.[3]

**AFFIRMED AND REMANDED.**

---

[2] The partial dissent takes us to say that "Vehicle" means the "Hyundai Blue Link . . . telematics system" itself. Dissent at 5. Not quite. The Hyundai automobile is certainly the vessel for, or the "thing that carries" the Connected Services. Dissent at 2 (emphasis omitted). But the role of the automobile in the Connected Services Agreement is, unsurprisingly, *vis-à-vis* the provision or receipt of Connected Services. To the extent that there are places in the CSA where "Vehicle" "refers to the entire automobile" separately from the Connected Services, Dissent at 2, that further proves our point that the term's use throughout the CSA is inconsistent. Shapeshifting of this sort does not make the meaning of "Vehicle" clear and explicit.

[3] Because our conclusion that the scope of the arbitration agreement does not encompass Plaintiffs' claims is dispositive, we need not reach alternative grounds for affirmance. *See, e.g., Backcountry Against Dumps v. FAA*, 77 F.4th 1260, 1264 n.2 (9th Cir. 2023).

*Hageman, et al. v. Hyundai Motor America, Inc.*, No. 24-7823
*Bal, et al. v. Hyundai Motor America, Inc.*, No. 25-656
FORREST, Circuit Judge, dissenting:

I agree with the majority that the parties did not "clearly and unmistakabl[y]" delegate questions of arbitrability to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). I disagree, however, that Plaintiffs' claims fall outside the scope of the parties' arbitration provision. As such, I would reach Plaintiffs' unconscionability challenge and conclude that the arbitration provision is enforceable subject to severance of its one-year statute of limitations, which is substantively unconscionable because it applies only to Plaintiffs. For these reasons, I would reverse the district court's denial of Hyundai Motor America, Inc.'s motion to compel arbitration.

1.      **Scope of Arbitration Provision.** California contract law gives effect to the parties' outward manifestations of intent, of which the text of an agreement is the most important. *See Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 12 (Ct. App. 2021) (citation modified) ("Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."); *accord Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 292 Cal. Rptr. 3d 740, 749 (Ct. App. 2022).  Whether the parties' arbitration agreement in the Connected Services Agreement (Agreement) covers Plaintiffs' claims comes down

1

to the meaning of "Vehicle" because the parties agreed to arbitrate any disputes "arising out of or related to this Agreement, Connected Services, Connected Services Systems, Service Plans, [or] your Vehicle . . . except any disputes or claims which under governing law are not subject to arbitration." The Agreement defines "Vehicle" to mean "Your Hyundai . . . vehicle" that "come[s] with an authorized Hyundai Blue Link . . . telematics system . . . , which is the equipment, including hardware and software, used to provide Connected Services to [the] Vehicle." In other words, as the thing that *carries* the telematics system, rather than the telematics system itself.

The use of "Vehicle" throughout the Agreement is consistent with that meaning. *See Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 573 (Cal. 1999) (explaining that, where a term appears in multiple clauses of a contract, "it is reasonable to assume [the term] has the same meaning in both clauses" absent anything "suggest[ing] that these two clauses define [the term] differently"). The Agreement refers to "[t]he purchase or lease price of your Vehicle," the "occupants of your Vehicle," "your Vehicle's . . . speed," "your Vehicle's . . . service data," "your Vehicle's . . . mechanical condition," and "incidents involving your Vehicle." In each instance, "Vehicle" obviously refers to the entire automobile, rather than just its telematics system. Because "Vehicle" is a defined term and there is no reason to

2

think that it means something different in the arbitration provision than it does throughout the rest of the Agreement, its meaning is unambiguous.

The majority reasons that construing "Vehicle" to mean what the Agreement defines it to mean would lead to "absurd results." Maj Op. 7–8. Specifically, the majority contends that it is "unlikely that Plaintiffs' reasonable expectation when entering into a contract of adhesion related to Connected Services was that any and all claims related to their automobiles . . . would be forced into arbitration." Maj. Op. 8–9. Adhesion contract or not, the absurdity canon cannot bear the weight the majority places on it.

California courts do not look beyond the plain text to contextual indicators of meaning unless the text is ambiguous. *See, e.g.*, *Pfeifer v. Countrywide Home Loans, Inc.*, 150 Cal. Rptr. 3d 673, 694 (Ct. App. 2012) ("The doctrine of *ejusdem generis* is employed as an interpretive aid only when the language in the contract . . . is ambiguous."); *accord Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 223 n.5 (Ct. App. 2008). This is because California Civil Code § 1637 requires a court to find that "the intention of the parties to a contract" is "doubtful" before looking to other principles. *See Eaton v. Thieme*, 59 P.2d 638, 640 (Cal. Ct. App. 1936). As explained, there is no ambiguity in the Agreement's use of "Vehicle," and, therefore, we need not ask whether the reading the parties gave it is absurd.

3

The majority relies on *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020), for the proposition that a contract term must be read to avoid the "absurd" result that a "plaintiff would be forced to arbitrate any dispute related to [that term], even if the dispute has nothing to do with [the primary subject matter of the contract]." Maj. Op. 8. But that was not the holding in *Revitch*. The question there was whether the word "affiliate" in an arbitration provision could encompass a company that was not an affiliate at the time the agreement was made. 977 F.3d at 717. We only considered the absurdity canon in conjunction with that inquiry because "affiliate" was "not elsewhere defined in the contract," requiring us instead to look to the word's "ordinary definition." *Id.* The ordinary definition of affiliate did not ultimately control, however, because we concluded it was absurd to think that the parties might have used the word that way given its sweeping implications. *Id.* at 717–18. California law reaches for the absurdity canon, in other words, only when a court must go beyond the four corners of a contract to ascertain the meaning of a term. Here, "Vehicle" is specifically defined, so we have no need to consider ordinary meaning—which means that we also have no need for the absurdity canon.

By hunting for ambiguity, the majority needlessly overcomplicates what should be a simple analysis. It suggests that because "'Vehicle' is described in proximity to, and not in any way separately from, the Connected Services," that somehow alchemically transforms the word from one referring to the "Hyundai . . .

4

vehicle" that "come[s] with an authorized Hyundai Blue Link . . . telematics system" into one referring to the "Hyundai Blue Link . . . telematics system" itself. Maj. Op. 6. This transformation is supposedly catalyzed by the Agreement applying "only to the Hyundai vehicles that offer Connected Services . . . and to the subscribed users of those Connected Services." *Id.* But that is irrelevant. While Plaintiffs only assented to the Agreement *because* they owned vehicles with access to Connected Services and they wanted to sign up for those services, to the extent this created an unequal bargaining relationship, that goes to procedural unconscionability and not to the construction of the Agreement itself. The same is true of the majority's suggestion that the relationship of the arbitration provision to the underlying "purpose of the [Agreement]" supports the conclusion that "Vehicle" does not mean vehicle. Maj. Op. 6–7.[1]

I would interpret the arbitration provision consistent with the meaning specified in the Agreement and conclude that it covers Plaintiffs' claims against Hyundai Motor America related to their 2020–2022 Hyundai Palisade vehicles.

---

[1]The majority seeks to evade this conclusion by suggesting the issue is "the role of the automobile" in the Agreement, which it defines "*vis-à-vis* the provision or receipt of Connected Services," in contrast to the vehicle itself, which "is certainly the vessel for . . . the Connected Services." Maj. Op. 9 n.2. But the only part of the automobile that operates "*vis-à-vis* the provision or receipt of Connected Services" is its telematics system—and redefining "Vehicle" to be limited to the automobile as it relates to that role is the same thing as redefining "Vehicle" to mean the automobile's telematics system.

2.    **Unconscionability.** Having concluded that Plaintiffs' claims are subject to the arbitration provision, I next consider whether this provision is unenforceable due to unconscionability. An agreement is unenforceable under California law if it is both procedurally and substantively unconscionable, though both kinds of unconscionability need not be present to the same degree. *See Velarde v. Monroe Operations, LLC*, 333 Cal. Rptr. 3d 301, 305 (Ct. App. 2025); *Torrecillas v. Fitness Int'l, LLC*, 266 Cal. Rptr. 3d 181, 185 (Ct. App. 2020), *disapproved of on other grounds, Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 539 (Cal. 2024); *Serafin v. Balco Props. Ltd., LLC*, 185 Cal. Rptr. 3d 151, 160 (Ct. App. 2015).

The Agreement is an adhesion contract, which renders it necessarily procedurally unconscionable. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089–90 (9th Cir. 2024). Placing the broad arbitration provision within a contract otherwise related to Connected Services is also evidence of procedural unconscionability. *See Penilla v. Westmont Corp.*, 207 Cal. Rptr. 3d 473, 482–83 (Ct. App. 2016). These factors alone indicate a significant degree of procedural unconscionability.

But substantive unconscionability is less clear. A contract term is substantively unconscionable when it is "overly harsh, unduly oppressive, unreasonably favorable," or shocking to the conscience. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (quoting *Sanchez v. Valencia Holding Co.*, 353 P.3d 741,

6

748 (Cal. 2015)) (quotation modified). Under the Federal Arbitration Act (FAA), we are precluded from finding substantive unconscionability without some fundamental unfairness in the design of the arbitration agreement itself. 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). Here, the district court improperly concluded that the broad scope of the arbitration provision could itself be a basis for substantive unconscionability, because the FAA and California law require courts to "treat the substitution of arbitration for litigation as the mere replacement of one dispute resolution forum for another, resulting in no inherent disadvantage." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030 (9th Cir. 2016) (citation modified). Therefore, the only basis for finding substantive unconscionability here is the arbitration provision's one-year limitations period, which applied exclusively to Plaintiffs.[2]

---

[2]Plaintiffs identify three additional possible sources of substantive unconscionability: the exception to the arbitration provision for disputes related to intellectual property, the potential abrogation of their warranties by the Agreement's incorporation clause, and the breadth of the arbitration clause. None is substantively unconscionable. That the intellectual property exception mostly favors Hyundai does not matter, as "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. LLC*, 282 P.3d 1217, 1232 (Cal. 2012) (citation modified). And I do not think that a California court would construe the incorporation clause in such a way that it would nullify Plaintiffs' warranties. *See Cione v. Foresters Equity Servs., Inc.*, 68 Cal. Rptr. 2d 167, 175 (Ct. App. 1997). Finally, as I note above, the FAA precludes us from finding substantive unconscionability based only on the fact that a topic is subject to arbitration.

This individual substantively unconscionable term does not warrant invaliding the arbitration provision in its entirety because the term can be severed. *See Ramirez*, 551 P.3d at 547 (holding severance is appropriate where an "illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice"). Irrespective of the circumstances surrounding the adoption of the agreement, "[r]equiring those who freely enter into a clear and unambiguous contractual obligation to honor that obligation . . . is both in the interests of justice and consistent with the law's preference to favor the enforcement of contracts and, if feasible, to carry out the intentions of the parties." *Kim v. Airstream, Inc.*, 335 Cal. Rptr. 3d 363, 376 (Ct. App. 2025) (citation modified). Therefore, I would sever the one-year limitations period and enforce the balance of the parties' arbitration agreement.

For these reasons, I respectfully dissent.